## MOBILE & MONTGOMERY RAILWAY COMPANY *v.* JUREY & Another.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE MIDDLE DISTRICT OF ALABAMA.

Argued April 15th, 1884.—Decided May 5th, 1884.

*Common Carrier—Contract—Court and Jury—Damages—Error—Insurance— Subrogation.*

The fact that a railroad company gives a shipper a bill of lading when the goods are delivered does not preclude the shipper, in an action against the company as common carriers, from showing, when such is the fact, that the bill of lading does not express the terms of the transportation contract.

A court instructing a jury as to the construction of a writing offered in evi-

dence as a contract, should take into consideration not only the language of the paper, but the subject matter of the contract and the surrounding circumstances.

When it plainly appears on the face of a record that the judgment below was right, it will not be reversed for a technical error which worked no injury to the plaintiff in error.

An insurer against loss by fire subrogated for the assured by reason of payment of the policy may, in a suit against a common carrier brought in the name of the assured for the value of the goods insured, recover the full amount of the loss or damage, without regard to the amount of the policy.   There is nothing in § 2891 Alabama Code in conflict with this general rule.

The measure of damages in an action against a common carrier for loss of goods in transit is their value at the point of destination with legal interest.

When a common exception is taken to a part of a charge involving two propositions, one of which is sound and the other error, the exception is of no avail unless the erroneous part be specially brought to the attention of the court before the jury retires.

The plaintiffs below (defendants in error) shipped cotton over the defendant's railroad, taking a bill of lading which exempted the company from liability from destruction by fire.   The cotton was insured for part of its value.   It was entirely destroyed in transit.   The policy being paid, this action was brought in the name of the shippers on the contract of shipment for the benefit of the insurer, but without averring the policy and its payment.   The material facts appear fully in the opinion of the court.   The contentions upon them were :   1. That the bill of lading expressed the contract, and could not be varied by parol evidence.   2. That the action being brought in the name of the shippers, without setting forth the policy, a recovery could not be had for the benefit of the insurer.   3. That in any event that recovery would be limited to the amount of the policy.   4. That the recovery in this form of action must be limited to the value of the goods less the amount received from the insurers.   5. There were also questions as to the pleadings and as to the rate of interest, which are stated in the opinion of the court.

*Mr. Thomas G. Jones* and *Mr. David Clopton* for plaintiff in error, submitted on their brief.   To the effect of the bill of lading as a contract they cited : *The Lady Franklin,* 8 Wall.

325 ; *The Delaware*, 14 Wall. 579. That the common-law lia-
bility of a common carrier may be limited by contract : *York
Company* v. *Central Railroad*, 3 Wall. 107 ; *Railroad Company*
v. *Androscoggin Mills*, 22 Wall. 594 ; 2 Waite, Actions & De-
fences, 39–41. That the shipper is presumed to assent to the
terms of a bill of lading : *Belger* v. *Dinsmore*, 51 N. Y. 166 ;
*Kirkland* v. *Dinsmore*, 62 N. Y. 171 ; *Steers* v. *Liverpool, New
York & Philadelphia Steamship Co.*, 57 N. Y. 1 ; *Grace* v.
*Adams*, 100 Mass. 505. To the insufficiency of the declaration
under the law and practice in Alabama : *Munter* v. *Rogers*, 50
Ala. 283 ; *Hill* v. *Nichols*, 50 Ala. 336 ; *Montgomery & West
Point Railroad* v. *Edmunds*, 41 Ala. 667. That the recovery
by the insurer must be limited to the amount paid on the
policy : *Hale & Long* v. *Railroad Companies*, 13 Wall. 367 ;
*Gails* v. *Hailman*, 11 Penn. St. 515 ; *Hart* v. *Western Rail-
road*, 13 Met. (Mass.) 99 ; *Connecticut Fire Insurance Co.* v. *Erie
Railway*, 73 N. Y. 399 ; *Stodder* v. *Grant*, 28 Ala. 416 ; *Colum-
bus Insurance Co.* v. *Peoria Bridge Association*, 6 McLean,
70 ; *Martin* v. *Ellerbe*, 70 Ala. 326 ; *Blow* v. *Maynard*, 2 Leigh,
29. And that the rate of interest computed in the judgment
was excessive : *Boyce* v. *Edwards*, 4 Pet. 111 ; *Hunt's Execu-
tors* v. *Hall*, 37 Ala. 702 ; *Fanning* v. *Consequa*, 17 Johns. 510.

*Mr. H. C. Semple* (*Mr. D. S. Troy* and *Mr. H. C. Tomp-
kins* were with him) argued for defendants in error.

MR. JUSTICE WOODS delivered the opinion of the court.

The defendants in error, Jurey and Gillis, brought this action
for the use of the Factors' & Traders' Insurance Company
against the plaintiff in error, the Mobile & Montgomery Rail-
way Company, to recover $12,000 for the failure of the latter
to deliver certain cotton which had been placed in its posses-
sion as a common carrier. The complaint, which was drawn
according to the form prescribed by the Code of Alabama, was
as follows :

"The plaintiffs claim of the defendant the sum of twelve
thousand dollars as damages for the failure to deliver certain
goods, viz., one hundred and ninety-seven bales of cotton,
weighing ninety-six thousand nine hundred and thirty-six

pounds, received by the defendant, as a common carrier, to be delivered to the plaintiffs at New Orleans, La., for a reward, which it failed to do."

The railroad company pleaded the following pleas:

" 1. The defendant for answer to the complaint says it is not guilty of the matters alleged therein.

" 2. For further answer to the complaint the defendant says that the plaintiffs, the said Jurey and Gillis, were paid the damages for the recovery of which this suit is brought, before the action was commenced."

The plaintiffs demurred to the second plea. The demurrer was sustained. The cause was then tried on an issue joined on the first plea, and resulted in a verdict and judgment for the plaintiffs for $10,344.25. The defendants have by this writ of error brought the judgment under review.

All the evidence in the case is set out in the bill of exceptions taken at the trial. It tended to show the following facts: The cotton mentioned in the complaint was delivered at Montgomery, Alabama, by the defendants in error, Jurey and Gillis, to the plaintiff in error, the railroad company, to be transported to New Orleans, and there delivered to the shippers. The cotton consisted of two hundred and sixty-four bales. The train upon which it was shipped was made up as follows: There were eight or ten box cars next to the engine; behind these were four flats loaded with the cotton, not covered by tarpaulins, and next to them, and last of the train, was a cab car in which the conductor rode; there were two men with buckets of water, besides the conductor and brakemen, to watch the cotton. While running down grade at about twenty miles an hour, and when the engine was not emitting any sparks, the signal to halt was given by the bell, and the cotton was discovered to be on fire. Every effort was made to stop the train as soon as possible, and when this was done, the hands on the train did what they could to save the cotton; but the fire was too hot, and the burning cars and cotton were consumed. The woods through which the train was running when the fire occurred, were on fire, and the woods were frequently burning along the defendant's road at that time of the year.

It further appeared that all the cotton loaded on the platform cars, consisting of one hundred and ninety-seven bales, was consumed, and of course never delivered to Jurey and Gillis.

The contract for the transportation of the cotton was made by Jurey with T. K. Scott, the agent of the railroad company in Montgomery. Jurey testified : " I arranged with Scott to take the two hundred and sixty bales to New Orleans for two dollars per bale. When the cotton was ready for shipment and hauling to the railroad depot, I again visited Mr. Scott, at the company's office in Montgomery, in order to ascertain when my risk ceased and that of the company began, and Scott answered that soon as the cotton was delivered on the railroad platform the cotton would be at the risk of the company." Jurey further stated: "I contracted with the railroad company, through its agent, Mr. Scott, to deliver the cotton in New Orleans for two dollars per bale, with the distinct understanding that it was at the railway company's risk as soon as delivered on its platform at Montgomery. After the cotton had been destroyed by fire I saw the bill of lading for the first time, and noticed that risk by fire was excepted. I immediately went to Mr. Scott and called his attention to it, and that such was not our agreement. The bill of lading was obtained by Mr. C. Hall, the broker in the premises. I paid an outside rate of freight in consideration of having the cotton transported without any exceptions or conditions." He further stated as follows : " We have been paid by the Factors' and Traders' Insurance Company of this city (New Orleans), by reason of its having been covered under our open policy, and this suit is for the use and benefit of that company as subrogee of our rights, because we reinsured the cotton in that company notwithstanding that defendant had guaranteed its delivery."

Scott testified that, while the cotton was being delivered on the railroad platform at Montgomery, and before the signing of the bill of lading, Jurey asked him if the railroad company would be responsible in the event the cotton was burned on the platform or in the cars, and he replied it would be in either event.

Crenshaw Hall testified that he was a cotton broker in

Montgomery, and acted for Jurey in delivering the cotton at the railroad company's depot; that he made no agreement and had no understanding with the railroad company in regard to the rate of freight, but simply sent the cotton to the depot by order of Jurey; Jurey told him that he himself would make the contract with the railroad company, as he thought he could get better rates. When the cotton was all delivered at the depot, witness received a bill of lading therefor. When the bill was delivered to him, Jurey, according to his recollection, was in the country, ten miles from Montgomery, and did not return until news had been received of the burning of the cotton. The bill of lading was signed in the handwriting of M. H. Sayer, a freight clerk at the depot of the railroad company in Montgomery. It was as follows:

"Mobile and Montgomery Railway Company.

"Received from C. Hall two hundred and sixty-four (264) bales cotton —— of which are in bad order, marked as stated below, and consigned to Jurey and Gillis, to be transported and delivered to same, New Orleans, at the rate of ——. And, in consideration of above rate, it is agreed upon and distinctly understood that the shipper releases the Mobile & Montgomery Railway Co. and connections from all liabilities for any loss or damage that may occur from the bursting of ropes and bagging, old damage, wet, or from fire while upon their roads."

Then followed a statement of the number of bales of cotton, and the marks. At the foot of the bill were the words and figures: "Frt. $2.00 bale."

The court, of its own motion, among other instructions, gave the jury the following:

"That the ground taken in argument by counsel for the railroad company was not the law, to wit: If Jurey & Gillis, before the commencement of the suit, had been paid by the Factors' & Traders' Insurance Company, as insurers, paying the loss it had insured against, and if Jurey & Gillis had no interest in the recovery, then the insurance company was the real plaintiff, and the burden of proof was on it to show the jury, by satisfactory

evidence, how much it had so paid; and that if it failed to do so or to give the jury evidence to enable them to determine satisfactorily what its loss or damage was, then nothing more than nominal damages could be recovered."

The court further charged the jury of its own motion, that if the plaintiffs were entitled to recover, the measure of the damages would be the value of the cotton at New Orleans, where it was to have been delivered, together with interest on said sum so ascertained, at the rate of eight per cent. per annum, from the time when the cotton ought to have been delivered.

The court, at the instance of the plaintiff's counsel, gave the following instruction: "That the paper read in evidence by the defendant as a bill of lading contains no restriction upon the liability of the defendant as a common carrier."

The defendant asked the court to give the jury the following instructions:

"2. If the jury find from the evidence that Jurey & Gillis insured said cotton in and by the Factors' and Traders' Insurance Company, for whose use this suit is brought, then, upon the loss of the cotton by fire, and payment of the insurance money by the insurance company to Jurey & Gillis, the insurance company was subrogated to the rights of Jurey & Gillis, and can maintain a suit in the name of Jurey & Gillis for their use to recover the amount paid by them to Jurey & Gillis; but upon these facts the plaintiffs cannot recover under the complaint in this case, and if the jury find such to be the facts, they must find for the defendant.

"4. If the jury find from the evidence that Jurey & Gillis were paid by the Factors' and Traders' Insurance Company (for whose use this suit is brought) before this suit was brought, for the damages sustained by Jurey & Gillis by the burning of the cotton, then the plaintiffs cannot recover in this action and under the complaint in this case."

The court refused to give either of these instructions.

The first assignment of error argued by the counsel for plaintiffs in error relates to the admission in evidence of the testimony of Jurey and Scott, in respect to the terms of the

contract by which the railroad company undertook to transport the cotton of the defendants in error to New Orleans. The contention is, that the bill of lading was the contract, and being in writing, no parol evidence could be received to vary its stipulations. Before this rule can be applied, the contract in writing must be shown to be the contract of the parties. One of the vital questions in the case was, what was the contract between the parties? No particular form or solemnity of execution is required for a contract of a common carrier to transport goods. It may be by parol, or it may be in writing, in either case it is equally binding. *American Transportation Company* v. *Moore*, 5 Mich. 368; *Shelton* v. *Merchants' Dispatch Company*, 59 N. Y. 258; *Roberts* v. *Riley*, 15 La. Ann. 103. The defendants in error insisted that the contract between them and the railroad company was by parol, that it was made between Jurey for the defendants in error, and by Scott for the railroad company, and denied that the bill of lading was the contract, and alleged that it had never been delivered to the defendants in error, but only to Hall, who was not authorized to make a contract for them. It is plain, upon this statement of the controversy, that evidence of the parol contract was perfectly competent, and it was a question to be decided by the jury whether the understanding as detailed by the witnesses or the bill of lading expressed the agreement of the parties. The evidence that the contract was by parol, and was not the contract expressed in the bill of lading, came from Jurey, one of the defendants in error, and from Scott, the agent of the plaintiff in error, between whom it was made, and was not contradicted. The contention that this evidence should have been excluded, is certainly not based on any solid ground. There is nothing in this assignment of error for which the judgment should be reversed.

The next contention of the plaintiffs in error is that the court erred in instructing the jury "that the paper read in evidence by the defendant as a bill of lading contains no restriction upon the liability of the defendant as a common carrier." It is insisted that the purport of the charge is that, independent and irrespective of the parol evidence and upon its face, the

contract contains no restriction. But such is evidently not the meaning of the instruction, because the words of the bill of lading clearly import an exception to the liability of a common carrier. What the court must have meant was that, in view of the circumstances under which the bill of lading was executed, as detailed by the uncontradicted evidence of the witnesses, taken in connection with the fact that the rate of freight which is stated to be the consideration for the exception, is left blank in the body of the bill of lading, it was not the intention of the parties to the contract that the railroad company should be exempted from any of the liabilities of a common carrier. The court was called upon to construe a paper writing. It must be conceded that the writing was open to construction. It was the right and duty of the court, in order to decide upon its meaning, to look not or'y to the language employed, but to the subject matter and surrounding circumstances. *Barreda y. Silsbee*, 21 How. 146, 161 ; *Nash v. Towne*, 5 Wall. 689 ; *Canal Company v. Hill*, 15 Wall. 94. When, therefore, the court was required to state authoritatively to the jury the meaning of the bill of lading, it cannot be presumed that it shut its eyes to the strong light thrown on it by the facts attending its execution, or that its instruction is to be interpreted as applying only to the words of the contract. It must be presumed that the court used all proper means to ascertain the true meaning of the bill of lading, and we think its interpretation, in view of all the circumstances of the case, was the right one.

The next ground upon which the plaintiffs in error ask a reversal of the judgment is the refusal of the court to give the charges numbered 2 and 4 as requested by the plaintiff in error. The argument in support of this assignment is as follows :. Section 2891 of the Code of Alabama provides: "In all cases where suits are brought in the name of the person having the legal right, for the use of another, the beneficiary must be considered as the sole party in the record." In no part of the body of the complaint is there any averment showing in what way and by what means the Factors' and Traders' Insurance Company acquired an interest in this suit or a right to bring

this action in the name of the owners of the cotton for their use, or that they have any interest in the suit, and as the evidence shows that the Factors' and Traders' Insurance Company acquired their right to bring a suit against a carrier by having paid their insurance liability to Jurey and Gillis, which was a secondary liability, the carrier being primarily liable, the form of complaint adopted in this case was not sufficient; that the complaint should state with certainty the facts showing the right of the insurance company to bring the action and the amount of the recovery to which they are entitled. The ground of their contention is that the recovery must be limited to the amount paid by the insurance company to the defendants in error, and that the burden is on the insurance company to prove what sum was so paid.

This is an attempt to reverse the judgment of the Circuit Court on a question of pleading. The record in the case, in our opinion, shows that the plaintiff in error made a contract for the transportation of the cotton of the plaintiffs, with no exception of the carriers' common-law liability; that it did not deliver the cotton, for the value of which this suit was brought; that the cotton was destroyed while in possession of the plaintiff in error, and was a total loss; and that the loss has been paid to the defendants in error by the insurance company. Under these circumstances, as it plainly appears on the face of the record that the judgment of the Circuit Court was right, it would not be reversed for an error which could not possibly have worked any injury to the plaintiff in error. *Brobst* v. *Brock*, 10 Wall. 519; *Decatur Bank* v. *St. Louis Bank*, 21 Wall. 294.

But we are of opinion that the ground upon which this assignment of error is based is not tenable, which is that the recovery must be limited to the amount paid by the insurance company to the defendants in error, and that the burden is on the insurance company to show how much it paid. Although the suit is brought for the use of the insurer, and it is the sole party beneficially interested, yet its rights are to be worked out through the cause of action which the insured has against the common carrier. The legal title is in the insured, and the .

carrier is bound to respond for all the damages sustained by the breach of his contract. If only part of the loss has been paid by the insurer, the insured is entitled to the residue. How the money recovered is to be divided between the insured and the insurer is a question which interests them alone, and in which the common carrier is not concerned.

The payment of a total loss by the insurer works an equitable assignment to him of the property and all the remedies which the insured had against the carrier for the recovery of its value. *Mason* v. *Sainsbury*, 3 Doug. 61; *Yates* v. *Whyte*, 4 Bing. New Cas. 272; *Clark* v. *Hundred of Blything*, 2 Bar. & Cress. 254; *Ætna Ins. Co.* v. *Tyler*, 16 Wend. 385; *Atlantic Ins. Co.* v. *Storrow*, 5 Paige, 285.

This rule is so strictly applied, that when two ships, belonging to the same owner, came into collision with each other, and one of them sank and became a total loss, it was held that the insurers of the lost ship did not, upon their payment of a total loss, become entitled to make any claim for the loss against the insured as the owner of the ship in fault in the collision, for their right existed only through the owner of the ship insured, and not independently of him, and as he could not have sued himself, they could have no remedy against him. *Simpson* v. *Thompson*, 3 App. Cases, 279; see also *Globe Ins. Co.* v. *Sherlock*, 25 Ohio St. 50.

In *Gails* v. *Hailman*, 11 Penn. St. 515, it was held that "a shipper who has received from the insurer the part of the loss insured against, may sue the carrier on the contract of bailment, not only in his own right for the unpaid balance due to himself, but as trustee for what has been paid by the insurer in ease of the carrier;" and upon the trial of such a case, the court will restrain the carrier from setting up the insurer's payment of his part of the loss as partial satisfaction.

Insurers of a ship which has been run down and sunk by the fault of another ship, are, upon their payment of a total loss, subrogated to the right of the insured to recover therefor against the owners of the latter vessel, and if their policy was a valued one, their payment of this value will give them the whole *spes recuperandi*, and the right to the whole damages, though the

insured vessel was, in fact, worth a larger sum than the valuation named in the policy. *North of England Ins. Association* v. *Armstrong*, L. R. 5 Q. B. 244. See, also, *Clark* v. *Wilson*, 103 Mass. 219, 227.

The authorities above cited which relate to marine policies apply, as well as the other cases cited, to the question in hand, for in *Hall & Long* v. *Railroad Companies*, 13 Wall. 367, it was held that "there is no reason for the subrogation of insurers by marine policies to the rights of the assured against a carrier by sea which does not exist in support of a like subrogation in case of an insurance against fire on land."

We are of opinion, therefore, that the recovery in this case might properly have been, as it was, for the entire loss sustained by the nominal plaintiffs with regard to the amount of insurance paid. The only effect of the provision of section 2891, Code of Alabama, is to make the party for whose use the suit is brought *dominus litis*, and to give it the same rights as if it were the assignee of the cause of action. Its recovery is on the nominal plaintiff's cause of action. But as there is no formal assignment, and the suit is in the name of the nominal plaintiff, the party beneficially interested is only bound to establish the cause of action, without proof of his equitable right to the recovery.

It follows from these views that the complaint was sufficient for the case as presented by the evidence, and that the evidence tended to sustain the case stated in the complaint.

The next ground for reversal argued by the plaintiff in error is, that the Circuit Court erred in sustaining the demurrer to the second plea. Is has already been stated that, under the Code of Alabama, where a suit is brought in the name of the person having the legal right for the use of another, the beneficiary must be considered as the sole party to the record. In view of this provision of the statute, in a suit brought by one person for the use of another, a plea of payment, which does not allege a payment to the beneficial plaintiff or a payment to the person holding the legal title, before the person holding the beneficial interest acquired his right, is clearly bad. The plea which was adjudged insufficient makes neither of these

averments, and was therefore bad. The object of the plea seems to have been to raise the question whether the payment by the insurer to the insured, for property lost while in the possession of a common carrier, discharged the liability of the common carrier. If the plea was based on any such theory, the views we have expressed show that it did not present a bar to the present action.

The last assignment of error which we shall notice, is based on the charge of the court, to the effect, that "the measure of damages would be the value of the cotton in New Orleans, where it was to have been delivered, together with interest on said sum at eight per cent. per annum from the time when the cotton ought to have been delivered." The error alleged is, that the rate of interest should have been placed at five per cent., which is the legal rate in Louisiana, where the contract was to be performed, and not at eight per cent., which was the legal rate in Alabama, where the contract was made.

Conceding that the charge in respect to the rate of interest was erroneous, the judgment should not be reversed on account of the error. The charge contained at least two propositions, first, that the measure of damages was the value of the cotton in New Orleans, with interest from the time when the cotton should have been delivered; second, that the rate of interest should be eight per cent. It is not disputed that the first proposition was correct. But the exception to the charge was general. It was, therefore, ineffectual. It should have pointed out to the court the precise part of the charge that was objected to. "The rule is, that the matter of exception shall be so brought to the attention of the court, before the retirement of the jury to make up their verdict, as to enable the judge to correct any error if there be any in his instructions to them." *Jacobson* v. *The State*, 55 Ala. 151.

"When an exception is reserved to a charge which contains two or more distinct or separable propositions, it is the duty of counsel to direct the attention of the court to the precise point of objection." *South & North Alabama Railroad Company* v. *Jones*, 56 Ala. 507.

So in *Lincoln* v. *Claflin*, 7 Wall. 132, this court said: "It is

possible the court erred in its charge upon the subject of damages in directing the jury to add interest to the value of the goods. ... But the error, if it be one, cannot be taken advantage of by the defendants, for they took no exception to the charge on that ground. The charge is inserted at length in the bill. ... It embraces several distinct propositions, and a general exception cannot avail the party if any one of them is correct." On these authorities we are of opinion that the ground of error under consideration was not well saved by the bill of exceptions.

Many other grounds of error have been assigned though not argued by counsel for the plaintiff in error. But what we have said covers most of them. The others are not well taken. We find no error in the record.

*The judgment of the Circuit Court is affirmed.*