[Filed March 19, 1885.]

# THE STATE OF OREGON v. AARON LURCH.

CRIMINAL LAW — UTTERING FORGED WRITING — ADMISSION — SIMULATED HAND-WRITING. — Upon the trial of an indictment for uttering a forged writing, to wit, a promissory note, evidence that the name signed to the note had the appearance of being a different handwriting from the body of the instrument is proper, notwithstanding the accused admits that he signed the name, claiming to have had authority to do so.

ID. — INTENT TO DEFRAUD SUFFICIENT — CONSTRUCTION OF STATUTE. — To sustain a conviction upon such a charge, under section 592 of the Criminal Code, the State must prove that the accused had made such a use of the forged instrument as might have resulted in injuring or defrauding some one. If the note has been "uttered or published as true and genuine" with *intent* to defraud, the offense is made out, though no defrauding be actually accomplished.

ID. — CONSTRUCTION OF STATUTE — EVIDENCE OF ACCUSED — CROSS-EXAMINATION OF. — The statute of this State, which allows a person accused of a crime to be a witness in his own behalf (Laws 1880, p. 28), strictly confines the right to cross-examine him to the facts testified to in chief; and it was error to require the defendant on cross-examination to write his own name, or that of another person, when he had not testified in reference thereto in his direct examination.

EVIDENCE — RECALLING WITNESS. — After a witness has testified that he did not sign the note in question, he cannot be recalled to write his name for comparison with the signature to the note.

APPEALS — ERROR — WHEN MATERIAL. — When it does not appear that errors committed at the trial have prejudiced the accused, this court will not ordinarily reverse the case. But where the error consists in the infraction of a constitutional guaranty in favor of personal liberty, the law will presume an injury, and adjudge accordingly.

LANE COUNTY.    Defendant appeals.    Reversed and new trial ordered.

This was an indictment charging the appellant with knowingly uttering, etc., to one S. H. Friendly, a forged note, purporting to be the note of J. V. Thornton. On the trial the State produced said Thornton as a witness, to show by him that he had not signed the note in question, nor authorized the defendant to do so for him. After the defendant had rested, the plaintiff recalled Thornton, had him write his name to be compared with the signature to the note, and submitted his name so written to the jury.

S. H. Friendly called for the prosecution, testified that in February, 1884, the defendant gave him a check on Corbett & Macleay of Portland for $428, to cover his indebtedness to the

witness, which check was protested; that he notified defendant of the fact, and demanded security for his debt; that some weeks later defendant delivered to him the instrument in question with others, as collateral security therefor; that he gave no consideration for the note except that he agreed to extend the time of payment of the check.    The check was afterwards paid in full.

The defendant offering himself as a witness, testified that Thornton was owing him, and that the note was given by him in satisfaction of the debt; that witness wrote the note and asked T. to sign it, and the latter replied, "you sign it, my hands are dirty," whereupon witness wrote his name as requested; that he wrote it as much like Thornton's writing as he could, thinking that was the way to make it legal.    On cross-examination the defendant was required to write his own name and that of Thornton in his ordinary handwriting, and also to write the latter name as much like the signature to the note as he could.    These facts present the errors alleged.

*William R. Willis*, for Appellant.

*J. W. Hamilton, District Attorney*, for Respondent.

THAYER, J.—Among the several grounds of error assigned in this case, there are three which deserve especial notice, viz.: Whether the promissory note alleged to have been forged was uttered or published as true and genuine, with intent to injure or defraud anyone, within the meaning of section 592 of the Criminal Code; whether the court had the right to require the appellant, when upon the stand as a witness, to testify to facts he had not testified to in his direct examination, and to write his name, and that of Lurch Bros., and also of J. V. Thornton; and whether it was proper to recall said Thornton, after he had testified in the case that he did not sign the note, and have him write his name, to be compared with the signature on the note.

The bill of exceptions shows that a large amount of immaterial testimony was taken in the case, which doubtless protracted the trial to an unnecessary length.    The question to Thornton, when on the stand as a witness, as to whether he signed his

name to the note, may have been proper as a preliminary question, although it had been admitted by the appellant's counsel in his opening statement to the jury; but the testimony in regard to the note of May 12, 1883, for ninety dollars, to Thornton having paid it, taken a receipt therefor, and the exhibiting and giving in evidence the receipt, was clearly irrelevant.

The evidence that the signature to the note had the appearance of having been written by some one other than the person who wrote the body of the note, was, no doubt, proper, notwithstanding the appellant's admission that he signed Thornton's name to it as maker. His claim that he so signed it by Thornton's direction, and that he acted in good faith, was impeached, to a great extent, by the fact that he disguised his handwriting. He signed Thornton's name to the note, without doubt; but his pretense that the latter directed him to do so might well be questioned when the fact was made known that he attempted to imitate Thornton's handwriting. He undertook, it is true, to explain why he tried to write Thornton's name *so as* to have it appear as though Thornton wrote it himself, but it was highly proper that the jury should consider whether or not the explanation was satisfactory. It was an important circumstance, and the testimony bearing upon it was rightly submitted to the jury.

The appellant's counsel claims that the transaction in regard to the appellant's delivery of the note in question, with other notes, inclosed in an envelope, to Friendly as collateral security for the payment of the check drawn by the former upon Corbett & Macleay in favor of the latter, could not, in view of the proofs, admitting the note to have been a forgery, have been intended to injure or defraud Friendly as charged in the indictment, and he cites Bish. Crim. Law, § 599, in support of his position. He claims that in order to bring the case within the section of the statute before referred to, Friendly must have parted with something of value, or have in some way obligated himself upon the faith of the particular note, in order to have been injured or defrauded. The State undoubtedly had to prove, in order to secure the appellant's conviction, that he had made such a use of the note as might result in injuring or

defrauding some one. If his deposit of the note with Friendly could not possibly have injured the latter, the intent to injure or defraud would not have been established. The note must have been "uttered or published as true and genuine," with that intent, before any crime could be claimed to have been committed under the section of the statute; but no injury or defrauding need, in fact, have been accomplished in order to complete the crime. The intent must exist, but it may wholly fail to produce injury or to defraud anyone, and still the crime be committed. The pledge of the note to Friendly, under the circumstances shown by the bill of exceptions, might have resulted in injuring or defrauding him. If the check had not been paid, he could not, as he had a right to suppose, have resorted to the note if it was a forgery. It was left with him to quiet any fears upon his part that he would not receive the amount of the check to apply upon his debt. It was calculated to lull him into security; and although he was not in fact injured thereby, nor defrauded in consequence thereof, yet the intent may nevertheless have existed and the crime been complete.

The appellant knew the note had been forged, if it were forged; knew it was a mere sham, a deceit; yet he pledged it to Friendly to induce him to rely upon it. He could not, therefore, avoid the charge that he intended to injure or defraud ; the act, in itself, was a fraud. Under this view the court below properly submitted the case to the jury under the instructions given, and committed no error in refusing the instructions asked by the appellant's counsel.

The Circuit Court, however, did commit error in permitting counsel for the State to examine the appellant, when upon the witness stand, upon matters not testified to by him in his evidence in chief, and in requiring him to write his name and other names, as before suggested. The statute of the State, which allows the accused in such a case to be a witness, provides that when he offers his testimony as a witness in his own behalf, he shall be deemed to have given to the prosecution a right to cross-examine him upon all facts to which he has testified, tending to his conviction or acquittal. (Laws 1880, pp. 28, 29.) But this

does not compel him to be a witness against himself beyond such cross-examination. The humane principle of the law, that a party shall not be compelled to be a witness against himself, otherwise remains in full force, and is as effectually violated when the cross-examination of the accused is extended beyond the facts to which he has testified, as it would be if he were to be called and made to testify at the instance of the State. The object and purpose of the statute referred to were to afford an opportunity to the accused to relate his account of the transaction in which he is alleged to be implicated, and it would be a great violation of good faith to permit the State to take advantage of his situation and change the trial into an inquisition. The cross-examination in such cases must be strictly confined to the facts testified to by the accused. The law throws around him in such case an immunity which ought to be sacredly maintained.

It was error, also, to allow the witness Thornton to be recalled to write his name, in order to compare it with the signature to the note. He had testified that it was not his signature, and that was as far as counsel for the State should have been permitted to pursue the subject. He was supposed to have told the truth when he said under oath that he did not sign the note. He could not then be allowed to prove or attempt to demonstrate that he had told the truth. Such practice might, perhaps, be permitted upon cross-examination; but it is not proper for the party who calls the witness to undertake to bolster up his evidence in that way.

These errors do not appear to have prejudiced the appellant, and this court, ordinarily, will not reverse a judgment in such a case; but where the error consists of an infraction of a constitutional guaranty in favor of personal liberty, such as the compelling a party accused of a crime to be a witness against himself, the law will presume an injury, and the court have no alternative but to adjudge accordingly.

The judgment appealed from will therefore be reversed, and the case remanded for a new trial.

WALDO, C. J., dissents.