## BALL v. UNITED STATES.*

(Circuit Court of Appeals, Ninth Circuit. June 18, 1906.)

No. 1,221.

1. CRIMINAL LAW—FEDERAL STATUTES—APPLICATION—WITNESSES—NOTICE TO DEFENDANT.

Rev. St. U. S. § 1033 [U. S. Comp. St. 1901, p. 722], requiring the district attorney to furnish accused with a list of all witnesses to be produced against him on the trial, applies only to treason and capital cases tried in the courts of the United States, and not to felonies for which prosecutions were had in a territorial court of Alaska, under the Alaska Codes of Criminal and Civil Procedure.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1420–1436.]

*Rehearing denied October 29, 1906.

2. SAME.

Since the Alaska Codes of Criminal and Civil Procedure contain no requirement that a list of witnesses be furnished the accused, the government is entitled to call witnesses against accused whose names have not been furnished to him before trial.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1420–1436.]

3. HOMICIDE—EVIDENCE—DECLARATIONS OF THIRD PERSONS.

In a prosecution for homicide, evidence of conversations between witness and D., and accused concerning what opinion D. had expressed as to the probability of trouble between deceased and accused, and as to what opinion on that subject witness had expressed to accused, was inadmissible.

4. SAME—ENTRY ON PROPERTY—GOOD FAITH—EVIDENCE.

Where defendant shot deceased, who had entered on property of a corporation for the purpose of doing certain assessment work, evidence of the minutes of the election of the officers of the corporation, and a letter written by the secretary of the company to one of the men living on its property, was admissible as showing deceased's good faith in going on the property.

5. CRIMINAL LAW—EVIDENCE—OPINION.

Evidence of a witness in a prosecution for homicide that deceased and certain others, apparently by arrangement, all rushed onto the property occupied by defendant together, was incompetent as the witness' deduction from the appearance of things.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1035–1039.]

6. WITNESSES—CROSS-EXAMINATION—PRIOR CONVICTION.

In a prosecution for homicide, accused having tendered himself as a witness, the district attorney was entitled to ask him on cross-examination whether he had not formerly and under a different name, been convicted of using the United States mails to further a scheme to defraud.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1146–1148.]

7. SAME—RECORD OF CONVICTION.

Where accused offered himself as a witness in his own behalf, the introduction by the government of the record of a federal court, sitting in another state, convicting accused of a different offense, for the purpose of affecting his credibility as a witness, was not objectionable as in effect giving extraterritorial force to such judgment.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1161, 1162.]

8. SAME—MISDEMEANORS.

Carter's Code Alaska, pt. 4, § 669, provides that it may be shown by the examination of a witness or the record of a judgment that he has been convicted of a crime, and section 675 declares that a witness must answer as to the fact of his previous conviction of a felony. *Held*, that such sections did not preclude proof that a witness had been convicted of a misdemeanor by the record of such conviction for the purpose of affecting his credibility.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1126–1128, 1132.]

9. CRIMINAL LAW—APPEAL—OBJECTIONS NOT MADE AT TRIAL.

An objection to the admission of a judgment roll in evidence, not made at the trial, cannot be urged on appeal.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2639.]

147 F.—3

10. SAME—JUDGMENT ROLL—INDICTMENT.

An indictment is a proper part of a judgment roll introduced to prove a former conviction.

11. SAME—HARMLESS ERROR.

Where, in a prosecution for homicide, the district attorney erroneously read the heading of a newspaper clipping in the presence of the jury to the effect that deceased's slayer was an ex-convict, but such clipping went no farther than did the record proof of such fact properly introduced in evidence, the error was harmless.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 3127.]

12. WITNESSES—CROSS-EXAMINATION OF ACCUSED.

Where, in a prosecution for homicide, defendant claimed that deceased, who was his enemy, had been "trailing" him wherever he went and had threatened to injure him, and the prosecution claimed that the reason why deceased dogged defendant's footsteps was for the purpose of taking a picture of him to be used for identification in looking up defendant's criminal record, and not for the purpose of doing him bodily harm, it was not error for the court to permit defendant to be asked on cross-examination whether deceased had not told defendant that he would bring forward his record in other states, and that he wanted to take a snap-shot picture of him for identification.

13. CRIMINAL LAW—INSTRUCTIONS—NECESSITY OF REQUEST.

Failure of the trial court to charge that evidence of a prior conviction of accused was admissible only as tending to affect his credibility as a witness was not error, in the absence of a request therefor, or any objection to the court's omission so to charge.

[Ed. Note.—For cases in point, see vol. 14, Cent. Dig. Criminal Law, §§ 1996–2004.]

14. HOMICIDE—SELF-DEFENSE—INSTRUCTIONS.

Where an instruction on self-defense authorized an acquittal if it appeared to accused that he was actually in danger, and authorized the jury to consider apparent actual danger, the fact that it also charged that, in order to justify the homicide, it must have appeared to defendant's apprehension that he was actually in danger of his life or of receiving great bodily harm, and to avoid such danger or harm it appeared necessary to take deceased's life, was not erroneous as requiring that the danger must be actual and positive; the court having immediately thereafter properly charged on the subject of the appearance of danger.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homicide, § 629.]

15. SAME—DEMONSTRATION OF WEAPON.

Where the court charged that an assault was an unlawful physical force, partially or fully put in motion, creating a reasonable apprehension of immediate physical injury to a human being, the refusal of a portion of an instruction that any demonstration with a deadly weapon which puts another in fear is an assault, as well as any act done which constitutes menace and the beginning of violence toward another, was not error.

16. SAME.

In a prosecution for homicide, it was not error for the court to refuse to charge that if the jury believed that deceased was a man of violent or vicious character, and this was known to defendant, that fact, together with threats against defendant's life, would authorize defendant to act in self-defense on a less aggressive act, indicating apparent danger to life, than if his assailant were a man of ordinarily well-disposed character for peace.

17. SAME—APPEAL—INSTRUCTIONS—OBJECTIONS AT TRIAL.

Where no objection was made to an instruction when given, and no request for further instructions was proffered, accused was not entitled

to object that the court erred in giving an instruction defining manslaughter, because he was guilty of murder in the first degree, if guilty at all.

[Ed. Note.—For cases in point, see vol. 26, Cent. Dig. Homicide, § 693.]

18. SAME—INSTRUCTIONS—THREATS.

Where, in a prosecution for homicide, the charge correctly announced the rule that threats, unaccompanied at the time of the killing with any attempt to carry them into execution, were insufficient to justify the homicide, it was not error for the court to charge that no mere threats made by deceased before or at the time of the killing, unaccompanied at that time by any attempt to carry them into execution, were sufficient to justify the killing or reduce it to a lower degree of homicide than murder.

19. CRIMINAL LAW—EXCEPTIONS—INSTRUCTIONS.

Where an exception to an instruction was directed to an entire paragraph and did not point out the defective portions, so as to afford the trial court an opportunity to remedy them, the exception was insufficient to justify a review of such objectionable portions.

[Ed. Note.—For cases in point, see vol. 15, Cent. Dig. Criminal Law, § 2671.]

In error to the District Court of the United States for the First Division of the District of Alaska.

The plaintiff in error was charged with the crime of murder in the first degree. He was found guilty of manslaughter, and was sentenced to imprisonment for a term of 12 years. The facts disclosed upon the trial are, so far as it is necessary to consider them on the writ of error, in substance the following: The plaintiff in error had been the president of the Great American Marble Company, a corporation created under the laws of the state of Washington, having its principal place of business at Seattle. The company had secured certain marble lands on Fox Island, in southeastern Alaska. On October 18, 1904, at a meeting of the stockholders at Seattle, F. C. Harper was elected president in the place of the plaintiff in error. The latter contended that the election of Harper was void and that he was still the president of the company. The assessment work on the property for the year 1904 had not been completed. The plaintiff in error, claiming to be the president of the company, went to the property to do such assessment work. He was there on January 1, 1905, together with two others, Maxwell and Noble, living in a cabin belonging to the corporation, when William Deppe and a party accompanying him arrived on the grounds of the company. Deppe and his party claimed that they came to do the assessment work. Deppe and the plaintiff in error were enemies. They had had business differences in Seattle, and on one occasion had had a personal encounter in the office of the plaintiff in error, in which Deppe picked up a paper fastener from Ball's desk and struck the plaintiff in error with it. The latter testified that on that occasion Deppe kicked him and thereby produced hernia. There is evidence that while in Seattle each threatened the other with bodily harm. When Deppe and his party arrived at the property, the plaintiff in error informed him that there was not room in his cabin for them, whereupon Deppe said that he would make room and forcibly opened the door and entered the cabin. Finally, after some discussion, it was agreed that Deppe and his party should occupy and use another cabin situated on the property, and they took possession of that cabin. On the following day Deppe came two or three times to the cabin of the plaintiff in error. One of these times he came to try to get a stovepipe for his cabin, and when the stovepipe was refused he used insulting language to the plaintiff in error. Another time he came to the plaintiff in error to get him to remove a tent which was in the other cabin and was in the way. On the evening of January 2d, Dackins, who belonged to the Deppe party, had gone over to the cabin of the plaintiff in error and had

been there some time in friendly conversation with the members of the plaintiff in error's party, when Deppe came to the door and knocked. At first there was no response to his knock, but as he knocked the second time Noble arose and went to the door to open it. Whether he actually opened it, or whether Deppe opened it, is not definitely proven by the testimony. Deppe stepped in, removed his hat, and was turning to close the door, when Ball, who had been sitting on his bunk with his hand on his rifle, arose and ordered him to leave the cabin, and immediately or almost immediately fired. Deppe fell in the corner against the door and immediately expired. He was armed with a revolver carried in a holster, but there is no evidence that he attempted to draw it, except that of the plaintiff in error, and possibly the testimony of Noble may justify the inference that he meant to say that the deceased might have made a motion of his hand toward his pistol.

James E. Fenton, J. C. Campbell, W. H. Metson, C. H. Oatman, and F. C. Drew, for the plaintiff in error.

John J. Boyce and Edward E. Cushman, for the United States.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge, after stating the case as above, delivered the opinion of the court.

It is assigned as error that the court overruled the motion of the plaintiff in error to require the district attorney to furnish him a list of all the witnesses to be produced against him on the trial in accordance with the provisions of section 1033 of the Revised Statutes. [U. S. Comp. St. 1901, p. 722]. That statute applies only to the trial of treason and capital cases in the courts of the United States. The present case was tried in a territorial court under the Penal Code and Code of Criminal Procedure of Alaska. Those Codes contain no requirement that a list of witnesses be furnished the accused upon demand or otherwise. In Thiede v. Utah Territory, 159 U. S. 510–515, 16 Sup. Ct. 62, 40 L. Ed. 237, it was held that section 1033 does not control practice and procedure in territorial courts. The court said:

"In the absence of some statutory provision, there is no irregularity in calling a witness whose name does not appear on the back of the indictment or has not been furnished to the defendant before the trial."

It is contended that the court erred in sustaining the objection of the district attorney to questions propounded to the witness Noble as to certain conversations which he had with Dackins and with the plaintiff in error on the day of the homicide. The witness testified that he had a conversation with Dackins in the afternoon of that day. He was asked:

"Q. In that conversation did he say to you that the next time these men met one of them would be killed? A. No, sir. Q. Did he make any declaration in substance anything like that? (To which objection was made by the district attorney, and the objection was sustained by the court.)"

The witness was then asked:

"Q. Did you say to Mr. Ball, after your conversation with Dackins, that one of these two men would get hurt the first time they came together? (To which an objection was also sustained.)"

It is claimed that the purpose of these questions was to show threats made by the deceased against the accused. We do not see how the testimony which was sought to be elicited can be said to indicate that threats were made. The questions called for no testimony as to what the deceased had said. They referred to conversations only between the witness and Dackins, and the witness and the accused, and called for testimony as to what opinion Dackins had expressed concerning the probability of trouble between the deceased and the accused, and as to what opinion on that subject the witness had expressed to the accused. Such testimony was not admissible under any rule of evidence. It was not admissible as part of the res gestæ, nor as the declaration of a co-conspirator. There is nothing in the record to indicate that Dackins was unfriendly to the plaintiff in error or wished him harm. There is nothing to show that he ever made any threat against him. At the time when Deppe was killed, Dackins was sitting in the cabin of the plaintiff in error in conversation with Noble, and was unarmed. There is nothing to show that he knew or supposed that the deceased was coming to the cabin that night. We find no error in the exclusion of the proffered testimony.

Error is assigned to the introduction in evidence of minutes of the election of officers of the marble company and a letter of the secretary of that company to Noble, which was taken by Deppe when he went to Fox Island and there delivered to Noble. The objection made to the admission of this evidence is that the election of officers referred to in the minutes was absolutely void, and that said officers had no authority to direct Deppe to do the assessment work. The testimony was introduced for the purpose of showing the good faith of Deppe in going upon the property of the company to do the assessment work. We think it was admissible for that purpose. The homicide was not the result of any controversy over the possession of the property, and the evidence did not go to the jury for the purpose of showing that the plaintiff in error was not rightfully there. The court was careful to instruct the jury that if they believed from all the evidence that the plaintiff in error, in good faith and in the honest belief that he had the legal right so to do, entered upon the company's property for an honest purpose, he had the right to retain such possession, and it could not be forcibly interfered with or taken from him, except by due process of law, and that to defend such possession he had the same right as though he were legally the possessor thereof and in his own house.

It is contended that the court erred in striking out testimony given by the plaintiff in error as to what occurred when Deppe, Dackins, and Weir arrived on the property. He said: "Apparently by arrangement they all rushed in there together." This was clearly not competent testimony. It was evidence only of a deduction which the witness drew from the appearance of things. If there were facts or circumstances which indicated that the men rushed in there by arrangement, it was competent to prove them; but it was not competent to prove the impression made upon the mind of the witness.

It is assigned as error that the district attorney was permitted to ask

the plaintiff in error on cross-examination whether he had not formerly, and under the name of Charles R. Mains, been convicted in the Northern District of California of the crime of using the United States mails in a scheme to defraud. To this it is sufficient to say, for reasons stated below, that the district attorney clearly had the right to ask the question. Under the ruling of the court the witness was not required to answer the question, and did not answer it.

The trial court, over the objection of the plaintiff in error, admitted the record of the District Court of the United States for the Northern District of California of the conviction of the plaintiff in error of said offense. It is contended that this was error on two grounds: First, that to admit in the trial court, for the purpose of impeaching or affecting the credibility of a witness therein, the record of his conviction in the United States court for the District of California, was to give extraterritorial effect and force to a judgment of that court, the effect of which is necessarily limited to the jurisdiction in which the offense was committed, and in which the judgment was rendered. To this proposition Commonwealth v. Green, 17 Mass. 515–536, is cited. What the court held in that case was that a witness was not rendered incompetent to testify in the courts of Massachusetts by proof of his conviction of a felony in the state of New York, the effect of which, under the law of New York, was to render him infamous and incompetent there to be sworn as a witness, and that the judgment of conviction in that state had no extra-territorial effect. But that decision did not deny the admissibility in evidence of such testimony to affect the credibility of the witness. On the contrary, the court took pains to say of such witnesses:

"Their former condition and character may be made known to the jury to enable them to judge of their credibility, and this without depriving them of any valuable personal right by reason of their conviction abroad."

The second ground of objection to the record is that it proved a conviction, not of a felony, but of a misdemeanor, and that it was therefore not admissible under the Code of Alaska. Section 669, p. 4, of Carter's Codes of Alaska provides:

"It may be shown by the examination of the witness or the record of the judgment that he has been convicted of a crime."

Section 675 provides:

"But a witness must answer as to the fact of his previous conviction of a felony."

These sections were taken from the statutes of Oregon, Sections 852, 859, B. & C. Comp. Before they were adopted for Alaska, the Supreme Court of Oregon had in State v. Bacon, 13 Or. 143, 9 Pac. 393, 57 Am. Rep. 8, so construed these provisions as to sanction the admission in evidence, for the purpose of impeaching a witness, proof of his prior conviction of a misdemeanor. It is true that in Oregon a defendant in a criminal case, who testifies in his own behalf, may not be asked whether he has been convicted of a crime, but that is because the statute which permits him so to testify expressly restricts cross-examination to the testimony which he has given on direct examination.

State v. Lurch, 12 Or. 99, 6 Pac. 408; State v. Saunders, 14 Or. 300, 12 Pac. 441; State v. Bartmess, 33 Or. 110, 54 Pac. 167. In that respect the statute of Oregon differs from that of Alaska, as section 148 of the Penal and Criminal Code of that territory gives to the prosecution, without express restriction, the right to cross-examine a defendant who offers himself as a witness. We find no error in the admission of the record in evidence.

The further objection is made that the indictment was included in the judgment roll, which was admitted in evidence to prove the prior conviction of the plaintiff in error. It is a sufficient answer to this to point to the fact that the objection was not made in the court below. But, if timely objection had been made, we see no ground upon which it should have been sustained. The indictment is properly part of a judgment roll to prove a former conviction. Kirby v. People, 123 Ill. 436, 15 N. E. 33.

It is urged that the trial court erred in permitting the district attorney to take from the plaintiff in error a newspaper clipping which he held in his hand while testifying. The district attorney, while cross-examining the plaintiff in error, said:

"I see you hold in your hand a paper to which you have referred. Do you refer to that for the purpose of refreshing your memory? A. I am referring to this because to my recollection that scandal originated with Allan Weir. Q. Then you do refer to it to refresh your memory? A. Yes, sir; I do on that point."

The district attorney then requested permission to see the paper and took it from the hand of the witness. Objection was made, on the ground that the district attorney had no right to look at it. The objection was overruled. The district attorney thereafter propounded this question.

"The article referred to in this paper is headed, 'Deppe's Slayer Said to be an Ex-Convict.' Is that true? (Objection was made to the question, the objection was overruled, and the witness answered:) Yes, sir; that is true."

Conceding that it was error to read in the presence of the jury the heading of the newspaper clipping, that error was cured by the proof which was made by the record which was admitted in evidence of the former conviction. The heading of the newspaper clipping went no further than did the record proof which imported verity of the fact that the plaintiff in error had been so convicted.

It is contended that the trial court erred in permitting the district attorney to ask the plaintiff in error on his cross-examination if it was not a fact that Deppe had told him that he would bring forward his record in Michigan and California and that he wanted to take a snap-shot or kodak picture of him for the purpose of identifying him. It is argued that this question could have been asked only for the purpose of degrading the plaintiff in error, and that it had that tendency. The question was propounded after the plaintiff in error had testified that, while he and Deppe were both at Seattle, the latter was constantly lurking around his offices, invading the same, and daring him to come out; that he encountered Deppe at many times and places, and that when he met Deppe the latter would assume a threatening

attitude, and have his hand in his coat pocket; that Deppe would follow him on the street as he was going home, and would follow him to the public parks of the city, and was "trailing" him wherever he went. In addition to this testimony, the plaintiff in error testified as to threats of personal injury made to him by Deppe during that period. It was the theory of the prosecution that the acts of Deppe, in hanging around the office of the plaintiff in error and dogging his footsteps on the street, were for the purpose of taking a snap-shot picture of him, to be used for identification in looking up his record, and not for the purpose of doing him bodily harm. We do not see that it was reversible error to endeavor to obtain an admission from the plaintiff in error that such was the fact. The record shows, moreover, that the plaintiff in error introduced in his defense evidence that Deppe, during that period of time, was making inquiries concerning his record in Michigan and California.

It is contended that the failure of the trial court to instruct the jury that the evidence of the prior conviction of the plaintiff in error was to be considered only as tending to affect the credibility of his testimony was error. There was no request for such an instruction, nor was any objection made to the omission of the court so to instruct, nor is the failure of the court so to instruct assigned as error. In Kentucky, Tennessee, and Missouri it is held, contrary to the general rule, that in criminal cases the omission of the court to charge the jury fully as to any branch of the law of the case, though not requested, is ground for reversal, unless it is clear that no injury could have resulted therefrom. Potter v. State, 85 Tenn. 88, 1 S. W. 614; Heilman v. Commonwealth, 84 Ky. 457, 1 S. W. 731, 4 Am. St. Rep. 207; State v. Banks, 73 Mo. 592. These and other decisions are cited by the plaintiff in error. Among the cases cited are State v. Cody, 18 Or. 506, 23 Pac. 891, 24 Pac. 895, and Winchester & Partridge Mfg. Co. v. Creary, 116 U. S. 161, 6 Sup. Ct. 369, 29 L. Ed. 591. In State v. Cody, the majority of the court held with the rule of the states above mentioned, and thereby overruled prior decisions of that court; but State v. Cody was itself overruled in State v. Foot You, 24 Or. 61, 32 Pac. 1031, 33 Pac. 537. In Winchester & Partridge Mfg. Co. v. Creary, it was held that, in an action by the vendee of personal property against an officer attaching it as property of the vendor, declarations made by the vendor to a third party after delivery of the property are inadmissible to show fraud or conspiracy to defraud in the sale. In the course of the opinion the court used the following language, which is relied upon by the plaintiff in error:

"It is argued that these subsequent declarations of Webb were competent for the purpose of contradicting him as a witness in behalf of the plaintiff by showing that he had made statements out of court different from those made as a witness in behalf of the plaintiff. No foundation was laid for any such use of those declarations. Besides, if any such foundation had existed, the court should have instructed the jury that in determining between the parties to the record the true character of the sale, the subsequent declarations of Webb were competent only as impeaching his credibility as a witness."

We understand this expression of the court to mean that, if there had been proper foundation for the admission of the declarations, it would have been the duty of the court, in instructing the jury in connection therewith, to limit such declarations to their proper use. This is far from saying that the mere omission of the court so to instruct the jury, in the absence of a request for such an instruction, would have been reversible error. We think it may be said to be the general rule that the mere omission of the court, in the absence of a specific request, to limit the effect of evidence admitted only for a certain purpose, is not error. People v. Ah Yute, 53 Cal. 613; People v. Collins, 48 Cal. 277; Dow v. Merrill, 65 N. H. 107, 18 Atl. 317; Roebke v. Andrews, 26 Wis. 312.

It is contended that the court erred in modifying the instruction requested by the plaintiff in error on the subject of self-defense by adding thereto the following:

"The court charges you that in order to justify the homicide it must have appeared to the defendant's apprehension that he was actually in danger of his life or of receiving great bodily harm, and to avoid such danger or harm it appeared necessary to him to take the life of the deceased."

It is objected to this instruction that it conveyed the idea that the danger must be actual and positive, and that it excluded the consideration of the appearances of danger, which under the law would justify homicide in self-defense. We do not so read the instruction. It expressly authorized the jury to acquit the plaintiff in error if they found that it appeared to his apprehension that he was actually in danger. It authorized the jury to consider apparent actual danger, and the court immediately thereafter properly charged the jury on the subject of the appearance of danger to the plaintiff in error.

It is assigned that the court erred in giving an instruction requested by the plaintiff in error by omitting the following portion thereof:

"Any demonstration with a deadly weapon which puts another in fear is an assault. Any act done which constitutes menace and the beginning of violence toward another is an assault."

The court charged the jury that:

"An assault is an unlawful physical force partially or fully put in motion creating a reasonable apprehension of immediate physical injury to a human being."

No fault is found with that instruction, but it is contended that the requested instruction should have been given. We do not think the court erred in refusing it. It is not true that any demonstration with a deadly weapon which puts another in fear is an assault. A careless demonstration with a deadly weapon might put another in fear, and yet it would not be an assault, and the same is true of other demonstrations that might be suggested.

Error is assigned to the refusal to give an instruction to the effect that if the jury believed from the evidence that Deppe was a man of violent or vicious character, and this was known to the defendant, that fact, taken together with threats against the life of the defendant, if any were proved, would give him the right to act in self-defense

upon ·a less aggressive act indicating apparent danger to life than if his assailant was a man of ordinarily well-disposed character for peace. In that connection the plaintiff in error cites the case of Roberts v. State, 68 Ala. 166, in which it was said:

"Where the character of a man is notoriously turbulent and bloodthirsty, and his threats are brutal, ferocious, and recently made, his armed entry upon the premises of his assailant might readily be inferred by a jury as being of so hostile a character as to place such assailant in imminent danger."

We think the court was justified in refusing the instruction, for the reason that it included the word "vicious." Whatever may be the rule as to the threats of a man of violent character, there is certainly no ground for instructing the jury that the threats of a man of vicious character are to give any greater right to a defendant to kill in self-defense than would the threats of a virtuous man. A man of vicious character may be as peaceable as another. We find no ground of reversal in the refusal of the court to give the re-·quested instruction, especially in view of the fact that the court gave correct and ample instruction on the subject of the law of self-defense.

It is contended that the court erred in giving an instruction defining manslaughter. This is said to be error for the reason that the evidence, if it proved the plaintiff in error to be guilty at all, proved him to be guilty of murder in the first degree, and that there was no evidence upon which to find him guilty of a different offense. It is contended, further, that, if the evidence authorized the court to instruct the jury on the subject of manslaughter, the instruction which the court gave by reading the statute of Alaska was wholly insufficient. We find it unnecessary to consider the merits of these contentions, for the reason that no objection was made to the instruction when given, and no request was proffered for further instructions.

It is contended that the court erred in charging the jury that no mere threats made by the deceased before or at the time of the killing, unaccompanied at the time of the killing with any intent to carry them into execution, are sufficient to justify the killing, or to reduce it to a lower degree of homicide than murder. It is said that this instruction is contrary to the rule announced in Thompson v. United States, 155 U. S. 271, 15 Sup. Ct. 73, 39 L. Ed. 146, in which the court said:

"An instruction that former threats to kill defendant cannot excuse him if there was nothing indicating a deadly design against the ·defendant at the time of the killing is erroneous in omitting all reference to deceased's conduct showing a present intention to carry out the previous threats."

But the charge as given by the trial court did not omit all reference to deceased's conduct. It expressly referred to the conduct of the deceased and correctly announced the rule that threats unaccompanied at the time of the killing with any attempt to carry them into execution are insufficient to justify homicide. As applied to the facts of the case, we think the instruction given was correct. If the evidence had been that the deceased came into the cabin where the plaintiff in error was, holding a pistol or other weapon in his hand, a dif-

ferent instruction might have been called for; but the evidence all is that he came empty-handed, and that if he made any attempt, as to which the evidence was conflicting, it was an attempt to reach for his pistol after he observed the threatening acts of the plaintiff in error.

It is earnestly insisted that the court erred in giving the following instruction:

"You are instructed that the law of self-defense was as much the right of the deceased, William Deppe, as it was that of the defendant; and if you shall find and believe from the evidence in this case, beyond all reasonable doubt, that the deceased, William Deppe, was attacked by the defendant when deceased was attempting to retreat through the door of the house where the homicide happened, and that he would have withdrawn or retreated if given a reasonable opportunity to do so, then you are instructed that the defendant is not entitled to be acquitted on the ground of self-defense."

It is claimed that this was an invasion by the court of the province of the jury, forbidden by section 191 of the Alaska Code of Civil Procedure, which provides that in charging the jury the court "shall not present the facts of the case, but shall inform the jury that they are the exclusive judges of all questions of fact." It may be conceded that an instruction which assumes the existence of a fact which should be left to the jury for ascertainment is erroneous, and that such error is not cured by a general instruction that the jury are the exclusive judges of all the facts. But does this instruction assume the existence of a fact which should have been left to the jury for ascertainment? It was the theory of the prosecution that the circumstances as disclosed by the evidence justified the inference that no time was given to the deceased to comply with the order to get out, and that the shot followed immediately, and that the deceased would have retreated through the door if he had been given an opportunity to do so. We think that the most that can be said against the instruction is that it is open to the objection that a portion of it assumes the existence of evidence which is not in the record, evidence that the deceased at the time when he was shot was attempting to retreat through the door. But the exception was not confined to that part of the charge. It was directed to an entire paragraph, portions of which were not subject to objection, and it did not point out the defective portion, so as to bring it to the attention of the court, and thus afford an opportunity to remedy it. Such an exception will not be considered in an appellate court. Cass County v. Gibson, 107 Fed 363, 46 C. C. A. 341; Columbus Const. Co. v. Crane, 98 Fed. 946, 40 C. C. A. 35; Railroad Company v. Varnell, 98 U. S. 479, 25 L. Ed. 233; Mobile & Montgomery R. Co. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527; Newport News and Miss. Valley Co. v. Pace, 158 U. S. 36, 15 Sup. Ct. 743, 39 L. Ed. 887.

There are other assignments of error, directed to portions of the charge and to refusals to charge, which we have carefully considered, but in which we find no ground for reversal.

The judgment of the District Court is affirmed.