## CHAMBERLAIN, STRONG & CO. v. LYMAN B. FARR.

*Book account. Sale of property. Right to charge unliquidated damages.*

The plaintiff purchased of the defendant a quantity of straw, then in the defendant's barn, which the parties, upon examination, estimated at two and a half tons, at $4,00 *per* ton, and it was agreed, that the plaintiff might draw away the straw at his pleasure. Within a few days the plaintiff drew away a part of the straw, supposed to be about one ton. The plaintiff, upon being subsequently requested, having refused to draw away the residue, the defendant threw it into his barn yard, the next spring, to his cattle, it then having become damaged. And it was held, that this was a sufficient sale and delivery of the straw, to entitle the defendant to recover the price in an action upon book account, deducting what was its value to him for the use to which it was put.

XXIII.    34

Chamberlain et al. *v.* Farr.

The plaintiff contracted to have the right to pass and repass the defendant's prem-
ises, agreeing therefor to pay him a reasonable compensation, including all
damages to his crops by reason of the fences not being kept up; and the audi-
tor reported, that it was the mutual expectation of the parties, that these dam-
ages would be embraced in the adjustment of their book accounts. And it was
held, that this was sufficient to entitle the defendant to bring these claims for
damages into the settlement of the account, and that the plaintiff was only en-
titled to recover such balance as was due to him, after *making* to the defendant
the proper allowance therefor.

And it was held, that under this agreement the defendant might recover for injury
done by sheep to his crops growing in a field adjoining that through which the
plaintiff passed, although the defendant did not keep in repair the fence be-
tween the two fields, it appearing, that the sheep came into the field, through
which the plaintiff passed, by reason of his leaving the fences down.

The plaintiffs, who were rail road contractors, were also allowed by the defend-
ant to make a ditch upon his land, they promising to see that he had his pay
for the damages which should be occasioned to him thereby, and it being the
expectation of the parties, that the damages would be appraised by the rail
road commissioners, and be paid by the plaintiffs, when thus ascertained, in the
adjustment of their accounts. Subsequently, upon an attempt being made by
the parties to settle the accounts, the plaintiffs said they would credit such sum
for these damages, as they should be appraised at by one of the engineers. But
no appraisement was ever made of them by the commissioners, or engineer.
And it was held, that these damages, also, might be adjusted in an action upon
book account between the parties.

BOOK ACCOUNT. Judgment to account was rendered in the
county court, and an auditor was appointed, who reported the facts
substantially as follows.

The plaintiffs presented an account against the defendant, the
debit side of which was allowed, as charged, at $170,97. The de-
fendant was allowed the amount of credits upon the plaintiffs' ac-
count, which, with an allowance of $2,00 for error, amounted to
$99,74. The defendant presented an account against the plaintiffs,
of which one item was for two and a half tons of straw, charged at
$10,00. It appeared, that the plaintiffs, in June, 1848, purchased
of the defendant a quantity of straw, then in the defendant's barn;
that the parties examined the straw, and agreed, that there were two
and a half tons of it, and that the plaintiffs should take it, at $4,00
per ton, and draw it away at their pleasure; that within a few days
the plaintiffs drew away a part of the straw, supposed to be one ton;

Chamberlain et al. *v.* Farr.

that the plaintiffs were requested, subsequently, to take away the re-
mainder, but neglected and refused to do so; and that the following
spring the defendant used the straw that remained, by throwing it
into his barn yard, to his cattle, it being then in a damaged state.
This item was allowed by the auditor at $8,00. The defendant's
account also contained, among other things, a charge for " damages
by ditch," allowed by the auditor at $10,00,—a charge for " damage
to buckwheat," allowed at $5,00,—a charge for " damage by team
crossing defendant's land," allowed at $8,00,—a charge for " damage
to wheat crop," allowed at $1,00,—and a charge for " use of ground
for waste earth, &c.," allowed at $7,00,—in reference to all which
the facts were reported as follows.

The plaintiffs were contractors for constructing a part of the rail
road, which passed over and near the defendant's farm, and had oc-
casion to pass and repass with their teams across the defendant's
fields; and it was agreed between the parties, that the plaintiffs
should be permitted so to pass, and should pay to the defendant all
damages, which should be thereby occasioned, and also all damages,
which should be occasioned by their leaving the fences open and
admitting cattle into the defendant's fields. The field, in which the
wheat and buckwheat grew, was separated by a fence from the field,
through which the plaintiffs' teams passed, and the defendant suffered
this fence to be open; if he had kept it in repair, the sheep would
not have entered and injured the crops. The defendant gave the
plaintiffs permission to place the waste dirt upon his land,—they
paying him for the privilege of so doing. The defendant also gave
the plaintiffs permission to make the ditch, for which he has charged.
The plaintiffs told the defendant, that as the ditch was needed for
the purpose of drawing the water from the rail road, it would prop-
erly belong to the rail road company to pay the damages, but that, if
the defendant would permit them to make the ditch, they would see,
that he had his pay for the damages occasioned by the ditch. At
that time it was the expectation of the parties, that this damage
would be appraised by commissioners, and be paid when thus ascer-
tained ; and the promise made by the plaintiffs, as stated by the wit-
ness, was, that the plaintiffs would pay the amount of damages that
the commissioners should allow, when determined by them; but the
commissioners never did appraise the damage. It did not appear,

that the parties ever expressly agreed, that these damages were to be matters of charge on book; but, from other facts that appeared in the case, the auditor found, that it was the expectation of both parties, that these damages would be embraced in the adjustment of their book accounts; and on the seventeenth day of November, 1849, when the parties met for the purpose of settling their book accounts, the plaintiffs gave the defendant credit on their book for these damages, at the same sum at which they were charged in the defendant's account,—the plaintiffs at the same time objecting, that the damages were too high, and saying that they were induced to allow the sum claimed, for the purpose of having a final settlement at that time, as they were bringing all their business at that place to a close, and that, if a full settlement were not made at that time, they would not be holden to allow, at a future time, any of the sums credited to the defendant.   There was no sum credited by the plaintiffs to the defendant for the damages occasioned by the ditch,—the plaintiffs saying, that they would credit to the defendant whatever sum Mr. Arms (an engineer on the rail road) would allow them. The subject of the settlement was, by consent of the parties, postponed for a day or two, that Arms might be consulted; and the defendant went to Middlebury the next day to see Arms; but Arms had left Middlebury and was not seen by either party.  The balance in favor of the plaintiffs, upon the accounts, as ascertained by the auditor, was $26,46.

On the seventh day of December, 1849, the plaintiffs procured the writ in this suit, which was taxed at $1,00, and the writ was served upon the defendant December 17, 1849.   But on the tenth day of December, 1849, the defendant tendered to the plaintiffs $35,75 in payment of the balance of the accounts and of the cost which had then accrued,—which the plaintiffs refused to receive; and this sum was delivered to the auditor by the defendant, and was returned to the clerk of the county court, with the report.   The defendant had not filed in the county court any plea of the tender.

The auditor decided, that there was nothing due from the defendant to the plaintiffs, to balance book accounts between them.

The county court, December Term, 1850,—PIERPOINT, J., presiding,—accepted the report and rendered judgment thereon for the defendant.   Exceptions by plaintiffs.

*C. Linsley* and *J. A. Beckwith* for plaintiffs.

When the subject matter of a sale is *in esse* and in the possession of the vendor, delivery is essential to a right of recovery on book. *Bundy* v. *Ayer*, 18 Vt. 499. At all events, no recovery can be had, when the property charged is used by the vendor. The plaintiffs refused to take the property away, and the defendant acquiesced by using it himself. Hence the matter is one of damages merely, and is distinguishable from *Blish* v. *Granger*, 6 Vt. 340, *Carpenter* v. *Dole*, 13 Vt. 580, and *Wilkins* v. *Stevens*, 8 Vt. 214. While it is conceded, that the range of book account is extensive, it is insisted, that limits to the action do exist. 14 Vt. 371. The rule fairly deducible from the adjudged cases is, that where the charge is otherwise improper, no allowance will be made, save to carry out the express agreement of the parties. *Barlow* v. *Butler*, 1 Vt. 146. *Farrand* v. *Gage*, 3 Vt. 326. *Case* v. *Berry*, Ib. 332. *Fassett* v. *Vincent*, 8 Vt. 73. *Gunnison* v. *Bancroft*, 11 Vt. 490. *Scott* v. *Lance*, 21 Vt. 508. *Miller* v. *Dow*, 17 Vt. 237. *Eaton* v. *Whitcomb*, Ib. 643. In no case have *"damages"* been allowed, when unliquidated. In all the cases, without exception, the amount of items excepted to as improper, when allowed, have been certain, or matter of mere computation. *Fry* v. *Slyfield*, 3 Vt. 248. *Blanchard* v. *Butterfield*, 12 Vt. 451. *Bailey* v. *Bailey*, 16 Vt. 656. *Leach* v. *Shepard*, 5 Vt. 368. *Pierce* v. *Smith*, 16 Vt. 166.

The damages to the wheat and buckwheat accrued in consequence of the defendant's own neglect; by the contract the plaintiffs were responsible only for their own. And even though the neglect of both conspired to cause the damages, the plaintiffs are not liable. *Noyes* v. *Morristown*, 1 Vt. 353. *Briggs* v. *Guilford*, 8 Vt. 264. The damages by the ditch were, by the terms of the contract, payable only on appraisment by the commissioners; and the appraisment has never been made.

*E. R. Wright* and *A. Peck*, for defendant.

The straw was legally chargeable. Although in form it was a sale at $4,00 a ton, yet it was sold by estimation at two and a half tons, and was equivalent to a gross sale of the whole bulk at $10,00, and nothing remained to be done by either party to complete the transfer. It was not only a sale, but a delivery,—especially as the

defendant had taken away a part of it. Even goods bargained and sold are chargeable on book. Chit. on Cont. 375. *Chaplin* v. *Rogers,* 1 East 192. *Elmore* v. *Stone,* 1 Taunt. 458. *Vincent* v. *Germond,* 11 Johns. 283. *Mattison* v. *Wescott,* 13 Vt. 258. *Paddock* v. *Ames,* 14 Vt. 515. The subsequent act of the defendant, in throwing it out of his way, cannot defeat his right to the price.

The remaining items of the defendant's account were chargeable on book. They accrued under a contract between the parties, by which the plaintiffs were to pay for the privileges they enjoyed; and it was the expectation of both parties, that these items would be embraced in the adjustment of their book accounts. There is no objection to these charges, upon their merits. The price to be paid was to embrace damage to crops done by cattle; and it was no part of the contract, that the defendant should repair a fence, where it was not needed by him. The defendant was to look directly to the plaintiffs for payment of the damages occasioned by the ditch; and what is said in reference to the commissioners appraising the damages was referred to merely as a mode of estimating the amount.

The opinion of the court was delivered by

REDFIELD, J. In regard to the straw, which was disputed in the defendant's account, we think the facts reported by the auditor show a case of sale and delivery. In matters of such bulk, all that is necessary, to constitute a delivery, is, that the contract of sale should be complete, the particular portion set apart by itself, nothing more remain to be done on the part of the vendor, and the vendee agree to take the goods, as they are, and where they are. All this appears in the present case, and more,—that the plaintiffs had removed a portion of the mass,—which is, under the circumstances, a very decisive act of possession evincing a delivery before. For it seems to have been sold in mass, at $10,00, or $4,00 a ton, calling it two and a half tons. What was taken was taken without weighing, or estimating, so far as appears. The auditor says, " supposed to be about one ton." This shows very clearly, that the plaintiffs considered it their own straw and so treated it. The fact, that the defendant threw it out into his yard, is not important, as regards the question of delivery. He became liable thereby to account for its value to him as manure, and the auditor has deducted two dollars on that account.

In regard to the other portions of the account, it seems impossible to say, they are in themselves proper matters of book account. They comprise breaches of contract and matters of unliquidated damages of various kinds and degrees; and the claim for damages to wheat and buckwheat partakes very much of the character of a tort.

But we think it may all fairly be said to be matter of contract between the parties. The plaintiffs contracted to have the right to pass and repass the defendant's premises, agreeing therefor to pay him a reasonable compensation, including all damages to his crops by reason of the fences not being kept up, that is, for the privilege they were willing to assume the burden of making full compensation for all loss ensuing in any of these modes. This surely would not justify the defendant in seeking redress in this form of action.

We suppose the sheep came into the field, through which the plaintiffs passed, by their leaving the fences down, and that the first fault is attributable to them. If the case is not to have this construction, there would seem to have been no ground whatever for making them liable for the damage to the buckwheat. And if the plaintiffs had not been guilty of the first default, the injury would not have occurred. After that they could hardly call upon the defendant to keep up a fence, which otherwise he would not have been required to keep up, perhaps. And even if this charge were disallowed in the defendant's account, it would not affect the result, the tender exceeding the balance found due more than five dollars.

The matter of the ditch seems to us much of the same character. We entertain no doubt, the arrangement was understood to be made between the plaintiffs and the defendant, and not between the defendant and the rail road company. The parties obviously so considered it. When a settlement was attempted, the plaintiffs did not object, that the matter was not for them to settle. The plaintiffs, or the rail road company, might have proceeded under the charter to obtain the right perhaps *in invitum.* But they chose to obtain it by contract. And what was said of paying what the commissioners should estimate it at was merely a mode of determining the price. For when the parties met, it was then agreed to be referred to an engineer. And in the trial before the auditor, the opinion of either might have been procured; and it does not seem to us, that the procuring of this award was a condition precedent to the defendant's

right to sue for and recover pay for the thing. Perhaps the plaintiffs were as much bound to procure this appraisal as the defendant. It does not certainly appear, which party undertook this burden.

The right to bring these matters into the settlement of the account must depend upon the contract of the parties. It is not contended, that an express contract to that effect would not be sufficient to create such a right. But an expectation, mutual and well founded, that such would be the case is, in ethics, and in law, we suppose, equivalent to an express contract. All contracts are to be so expounded. And if I know, that another is pursuing a given course of conduct, under the expectation that I will, in consideration thereof, pursue another given course, I am bound, in morals, and in law, to do it, the same as if I had expressly so stipulated. This is fully decided in *Gunnison* v. *Bancroft*, 11 Vt. 491.

This view of the case does incorporate these claims for damages into the substance of the account, and the plaintiffs' legal claim only extended to the balance upon a final adjustment of the whole account, including these items, as has been often decided before.

Judgment affirmed.