## THE OCEANICA.

### (District Court, W. D. New York. July 25, 1907.)

### No. 341.

**1. TOWAGE—INJURY TO TOW—MEASURE OF DAMAGES.**

Under a decree awarding damages against a tug for negligent injury to her tow, an allowance of an item of expense for piling water-logged lumber at double the rate charged for piling dry lumber sustained; it being shown that such charge was customary.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 38.]

**2. SAME—LOSS OF CARGO.**

The measure of damages recoverable from a tug for cargo of the tow lost through the tug's negligence is the market value of such cargo at the port of shipment, together with the carrying expenses incurred.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 45, Towage, § 38.]

**3. ADMIRALTY—FINDING OF COMMISSIONER—REVIEW.**

A finding of a commissioner on a question of fact, based on conflicting evidence, will not be disturbed, unless obviously erroneous.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 1, Admiralty, § 770.]

**4. EVIDENCE—VALUE OF VESSEL—SALE PRICE OF SIMILAR VESSELS.**

Upon an issue as to the value of a barge lost through the negligence of a towing tug, evidence to show the selling price of other similar vessels is inadmissible.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 20, Evidence, § 267.]

In Admiralty. On exceptions to commissioner's report. For former opinion, see 144 Fed. 301.

Brown, Ely & Richards, for libelants.
Clinton & Clinton, for cargo interests.
Crangle & Burke, for respondent.

HAZEL, District Judge. The first exception of the claimant to the allowance of the item of expense for piling water-logged lumber, to wit, $151.29 for 403,456 feet, is overruled. The testimony of the witness Meyer that the expense of unloading water-logged lumber was double the rate on dry lumber is sufficiently comprehensive to warrant the inference that the rate for hauling, inspecting and piling it would also have been double. That it ordinarily costs an additional amount to tally, inspect, and pile lumber in the yard after unloading it was not controverted, and, although the direct testimony upon this point was indefinite, the witness on his redirect and recross examinations made it reasonably clear that after water-logged lumber is unloaded a double charge is usually made for conveying it to the yard and piling the same.

The item of expense for back-piling and hauling dry lumber, amounting to $226.35, and objected to by libelants (first exception), was properly disallowed.

The allowance of the item for measuring and tallying 780,714 feet of lumber at $117.10 is sustained (claimant's second exception). Evidently this item was allowed by the commissioner on the reasonable assumption that, as the shipper was also the consignee, he probably

would not have incurred this expense at the port of unloading, even though it was usual for a consignee to take this precaution.

The libelants' third and fourth exceptions to the disallowances for use of steam pump and scow, and for towing same, are overruled.

The item of expense for the second attempt to dislodge the Massasoit, amounting to $687.30, is allowed, and claimant's third exception overruled. The evidence satisfactorily shows that the second attempt to dislodge the Massasoit was made in good faith, and no reason is apparent why the finding of the commissioner in relation thereto should be disturbed.

The libelants have excepted to the rule of damages adopted by the commissioner under the seventh paragraph of his report, wherein he allowed at the rate of $14.50 per 1,000 feet for the lumber shown to have been lost (libelants' fifth exception). They contend that the correct measure of damages was the market value of the lumber at the port of destination. The rule adopted by the commissioner of allowing the commercial value at the place of shipment is not inapplicable. The cases of Mobile, etc., Ry. v. Jurey, 111 U. S. 584, 4 Sup. Ct. 566, 28 L. Ed. 527, Railroad v. Estill, 147 U. S. 617, 13 Sup. Ct. 444, 37 L. Ed. 292, and Phœnix Ins. Co. v. Erie Trans. Co., 117 U. S. 322, 6 Sup. Ct. 570, 29 L. Ed. 873, cited by libelants, arose out of breach of contract of carriage, and not out of collision. That the proper rule of damages, where cargo is lost in transit on account of collision, is its value at the place of shipment, together with the carrying expenses incurred, is settled by the authorities. The Scotland, 105 U. S. 24, 26 L. Ed. 1001; The Umbria, 59 Fed. 489, 8 C. C. A. 194; The Vaughan & Telegraph, 14 Wall. 258, 20 L. Ed. 807.

This finding is also excepted to by claimant (fourth exception) upon the ground that no damages whatever arising from lost lumber have been proven. The commissioner found the value at the place of shipment based upon certain testimony of the libelants' witness Pfohl on cross-examination, and he states in his report that his conclusion is founded upon slender proof. Evidence in relation to the value of the lumber was submitted by libelants upon the theory that the damage recoverable was the value at the place of delivery. No testimony whatever was given by libelants as to value at the point of shipment. The evidence is not thought sufficient to uphold the finding. In view of the circumstances, the libelants should be permitted to make proof of the market value at the place of shipment, if they desire to do so, and for that single purpose the report of the commissioner is recommitted, and the case may be reopened to take such proof. If the libelants elect not to take such evidence, but to rely upon their claim that the value at the destination is the proper rule, then their exception will be overruled, and the exception of the claimant sustained.

The fifth exception of the claimant to the eighth finding of the commissioner is overruled. The reason assigned in the report for allowing the item is accepted as sufficient by the court.

The exception of the claimant (sixth) to the allowance of the sum of $10,000 in the eleventh paragraph of the commissioner's report, for total loss of the Massasoit resulting from negligent towage, is

overruled. The testimony regarding the amount of repairs to the vessel, claimed to have been about $5,000, is not free from criticism, in that it is indefinite as to the amount and nature of the repairs; no bills or vouchers being produced. Mr. Boland, one of the owners of the Massasoit, testified that most of the repairs were made by the ship's men at Tonawanda under the supervision of her master; but neither her master nor any of her men gave testimony, and no reason is assigned for such failure to give testimony. However, two other credible witnesses for libelants, who were familiar with the vessel and her value, explicitly assert that in their opinion her value at the time of collision was from $10,000 to $12,000. The commissioner has taken the lowest amount of the value as testified to by libelants' witnesses, and although the value reported, considering her age and the indefiniteness as to the amount expended for repairs, may be regarded as fairly liberal, yet his finding, which is one of fact and depending upon conflicting testimony, is not obviously erroneous, and therefore should not be disturbed. The North Star, 151 Fed. 168, 80 C. C. A. 536, and cases cited.

Claimant contends (seventh exception) that the commissioner erred in excluding evidence offered in its behalf to show the purchase price of other vessels of like construction and carrying capacity at about the time of the disaster, as bearing upon the value of the Massasoit. The testimony offered was properly excluded. That the evidence of the purchase price of an article is incompetent to prove the value of another article, although such article is similar to the article previously bought or sold, is well settled in this state. Blanchard v. N. J. Steamboat Co., 59 N. Y. 292; Gouge v. Roberts, 53 N. Y. 619; Huntington v. Attrill, 118 N. Y. 365, 23 N. E. 544; Matter of Thompson, 127 N. Y. 463, 28 N. E. 389, 14 L. R. A. 52. In Blanchard v. Steamboat Co., supra, the Court of Appeals expressly held it to be incompetent to show the commercial value of one vessel by showing the value of another vessel with which it might be compared. In Matter of Thompson, supra, the reason for the rule is well stated by Parker, J., from whose opinion I quote:

"The test in legal proceedings is: What is the present market value of the property which is the subject of the controversy? It may be shown by the testimony of competent witnesses; and on cross-examination, for the purpose of testing their knowledge respecting the market value of land in that vicinity, they may be asked to name such sales of property, and the prices paid therefor, as have come to their attention. But a party may not establish the value of his land by showing what was paid for another parcel similarly situated, because it operates to give to the agreement of the grantor and grantee the effect of evidence by them that the consideration for the conveyance was the market value, without giving to the opposite party the benefit of cross-examination to show that one or both were mistaken."

This excerpt in my judgment has peculiar force and aptitude to vessel property, the value of which is largely dependent upon its precise physical conditions, tonnage, equipment, construction, speed, carrying capacity, etc. It is true the adjudications upon this question in different states are not harmonious, and my attention is called to but one case in admiralty (The Laura Lee [D. C.] 24 Fed. 483), and after careful search I have been unable to find another, where the learned

court seemed to lay stress upon testimony of sales of other vessels of a similar kind to ascertain the value of the lost vessel. But as I read the opinion of the court such testimony was simply corroborative of an expressed opinion as to the value of the vessel there in question, and not in fact to establish her value. In view of the general difficulty to form a correct estimate regarding values of vessel property when the testimony is discrepant, I am clearly of the opinion that to open the door wide for the reception of such testimony to establish value would afford no material assistance in its ascertainment. Indeed, testimony of this description could only remotely guide the court in its determination, and after making comparisons the value would still be problematical. As it is, reliance must be placed upon the opinion of experienced witnesses acquainted with the property as to its value, and to test the witnesses' qualifications it is perfectly proper on cross-examination to ascertain the sales and prices of other like property, with which he may be familiar or to which his attention has been directed.

Except as hereinbefore specified, the report of the commissioner is sustained.