TAPLIN & ROWELL v. MAE H. CLARK.

February Term, 1915.

Present: MUNSON, C. J., WATSON, HASELTON, POWERS, and TAYLOR, JJ.

Opinion filed October 11, 1915.

*Sales—Entire Contract—Meeting of Minds—Mutual Consent—*
*Evidence—Weight and Sufficiency—Husband and Wife—*
*Acts of Husband as Agent—Binding Force—Gifts—Acts*
*Constituting—Delivery and Acceptance—Trover—Findings*
*—Construction—Witnesses—Private Memorandum—Admis-*
*sibility.*

A sale of three young horses, a brood mare, and designated growing oats for $800 was an entire contract upon a single consideration.

Where defendant, when she sold horses to plaintiff, gave him to understand, and he had a right to understand, and did understand, that three young horses were included in the sale, and defendant's husband, whom she sent with plaintiff to show him the horses that she wanted to sell, pointed out a particular young horse as one of those to be sold, the sale included that horse, though defendant understood that she was reserving it, since her language and acts must be construed as plaintiff had a right to understand and did understand them, and it is not permissible for her to give them a different operation because of some unexpressed intention.

Where a seller sent her husband to show the buyer the horses that the seller wanted to sell, the husband's acts within the scope of his authority were her acts, and she was bound by his act in pointing out a particular horse as one of those to be sold.

Where it appeared that when a colt that defendant then owned was foaled, defendant told her daughter, then about 14 years old, that the colt should be hers, and defendant's husband then consented to this; that the colt was raised and kept on defendant's farm with her other horses, and so far as appeared was used as one of defendant's horses; that the daughter made her home with her parents during all the time and always called the horse hers, and it was so treated by the family, but it did not appear that she had ever exercised dominion over the colt when young, nor after it became a horse and was being used on the farm, until the colt was sold by defendant, when the daughter was about 20 years old,

those facts did not show a delivery and acceptance, nor a completed gift, as matter of law, but made those questions issues of fact.

In trover for a horse that plaintiff claimed to have bought from defendant, though there was no express finding as to whether there had been a gift of the horse by defendant to her daughter, a finding that defendant at the time of the sale owned three young horses, one of which was the horse in question, inferentially found that there had been no gift.

Evidence *held* sufficient to support the finding that at the time of the sale, plaintiff was not given to understand that defendant's daughter then claimed the horse as her property.

Where a witness testifies to facts or transactions that he professes to recollect, a private memorandum, confirmatory of his testimony, which he testifies was correctly made by him at substantially the time of the occurrences therein recited, and which he then knew and recollected, is admissible in connection with his testimony, regardless of whether it refreshes his recollection, for such a memorandum is admissible either when used to refresh the witness's recollection, or when auxiliary to, or confirmatory of, his testimony as to facts that he professes to recollect.

TROVER for a horse. Plea, the general issue. Trial by court at the March Term, 1914, Orleans County, *Butler*, J., presiding. Judgment for plaintiff. Defendant excepted. The opinion states the case.

*Young & Young* for the defendant.

*W. W. Reirden* and *J. W. Redmond* for the plaintiff.

WATSON, J. This case was tried and facts found by the court. It is said by the plaintiffs that the supplemental findings of fact are no part of the case, because made after the expiration of the time within which the court could by law make additional findings. However this may be, we pay no attention to the question. The supplementary findings were made in answer to defendant's request to strike out a certain part of the original findings, and we give her the benefit of them for what they are worth.

It is found that on September 16, 1913, "the defendant was engaged in the occupation of farming and owned a farm, 13 cows,

five heifers, three calves, and five horse kind, consisting of three young horses, one brood mare called the Brewer mare, and one old horse about 30 years old and of no particular value.'' The plaintiffs were large dealers in horses, cattle, and farming utensils, and carried on a business of buying and selling personal property at private sale as well as by auction. Taplin is an auctioneer.

The horse for the conversion of which plaintiffs seek to recover in this action, was one of the "three young horses," mentioned above, and was called "Morgan.'' The defendant wanted to sell her live stock, and on the day before named called upon Taplin to arrange with him for putting the same up for sale at auction. He suggested to her the idea of selling the animals in a lump at private sale, and it was agreed that he would bring some one to her house, either that evening or the next morning, with that end in view.

The next morning Taplin, accompanied by one Heath who was in his employ, and a Mr. Stannard, went to defendant's farm. There was much talk about the property, about selling at auction and private sale. The value of the three young horses was discussed, and (quoting from the findings) "During the talk in the house that resulted in the sale in the presence of defendant, Mr. Clark, her husband, said that they could recommend that horse, (meaning 'Morgan,') because it had been used on the farm for two seasons, raking. There was some dispute as to just when this conversation occurred, but Mrs. Clark, the defendant, testified, when asked, in effect, if she remembered that Mr. Clark recommended the horse as being a horse that she had raked two farms with, that 'she said that the horse was perfectly gentle and safe. He was of a gentle nature, that she was the first one who hitched the horse into a horserake, and that same season, raked two farms, cut probably 125 tons of hay.' When asked if she was not praising up the horse, she said, 'we certainly were.' '' And the fact was found "so to be.''

From the conversation that took place, and what occurred, it is found "that defendant gave the plaintiff to understand, and the plaintiff did understand and believe and had a right to understand and believe, that the four horses included in the sale were the three young horses in the pasture and the Brewer mare, and that so understanding he paid the ten dollars to bind the bargain and wrote down in his memorandum book a list of the property

which he then understood he purchased as 'three colts' and 'one mare.' ''   Before the sale was completed, defendant's husband, at her request, took Taplin to the pasture for the purpose of pointing out and showing to him the cattle, calves, and horses which she desired to sell; and part of the animals then pointed out by said husband, to be sold, were the three young horses, including ''Morgan.''   The defendant, however, understood that she had reserved the horse ''Morgan'' and it was not included in the sale, and that she sold only two young horses and the Brewer mare, throwing in the old horse.   The agreed price for the property sold to plaintiffs, (which included also a piece of uncut oats,) was eight hundred dollars, of which ten dollars was paid down, and a check for the balance was sent to defendant   . pursuant to agreement, which check she received and deposited to her account.

The foregoing facts show beyond question an entire contract of sale upon a single consideration, (*Fay* v. *Oliver*, 20 Vt. 118, 49 Am. Dec. 764; *Carpenter* v. *Brainerd*, 37 Vt. 145; *White* v. *White*, 68 Vt. 161, 34 Atl. 425; *Waite* v. *Stanley*, 88 Vt. 407, 92 Atl. 633,) fully performed by both parties except the defendant did not deliver to the plaintiffs, according to the contract, the horse ''Morgan,'' and on demand therefor refused so to do, claiming it was not included in the sale.   It is urged, however, that the findings that defendant understood ''she had reserved the horse 'Morgan' '' and that it ''was not included in the sale,'' show no contract of sale between the parties, because they did not mutually assent to the same thing in the same sense. Yet in law there was mutual assent in the respect named:   The defendant's husband, on being sent by her to point out and show to Taplin the animals in the pasture, which she desired to sell, pointed out this horse as one of the young horses which were to be sold.   The husband was her agent in that behalf, and his acts within the scope of his agency, were her acts, and she is bound by what he then did as much as if the same acts had been done by herself.   *Newton* v. *American Car Sprinkler Co.*, 88 Vt. 487, 92 Atl. 831.   And when, as before seen, she gave Taplin to understand, and he did understand and had a right to understand, that the three young horses in the pasture were included in the sale, she is bound thereby.   The language and acts of the defendant in this regard, must be construed as the plaintiff had a right to understand them and did understand them, and de-

fendant can not now be permitted to give them a different operation in consequence of some mental reservation. *Gunnison* v. *Bancroft,* 11 Vt. 490; *Chamberlin, Strong & Co.* v. *Farr,* 23 Vt. 265; *Judevine* v. *Goodrich,* 35 Vt. 19; *Ballard* v. *Burton,* 64 Vt. 387, 24 Atl. 769, 16 L. R. A. 664; *Rowell* v. *Estate of Lewis,* 72 Vt. 163, 47 Atl. 783.

It is further contended that "Morgan" was owned by defendant's daughter, Albertine Patten, and not by defendant. In this respect the record shows that about the time of the birth of the colt, defendant told Albertine, then about fourteen years of age, that the colt should be hers, and to this defendant's husband consented. The colt was raised and always kept on the farm with the other horse kind. The daughter had made her home there with her father and mother during all the time, but for the past four years she had been away at school a large part of the time, coming home frequently. She always called "Morgan" her horse, and it was so treated by the family. At the time of the sale, the daughter then twenty years old, was present and heard the talk in respect to the four horses, and saw the money paid. There was some talk about the horse "Morgan" being her colt, but the plaintiff was not given to understand that she claimed it as her property. The facts found in this respect do not show, as a matter of law, a perfected gift. The findings do not show that Albertine ever exercised dominion over the colt when young, nor after it became a horse and was being used on the farm. It was always kept on defendant's farm and, so far as the record shows, was used there by defendant the same as though it was one of her own horses, without let or hindrance. The fact that Albertine made her home there, and always called "Morgan" her horse, and it was so treated by the family, does not in law constitute a delivery by the defendant and acceptance by Albertine. These were questions of fact to be passed upon by the trial court. *Fletcher* v. *Fletcher,* 55 Vt. 325. They were not expressly found either way; but that they were inferentially found in the negative, is reasonably certain from the finding that at the time of the sale, defendant owned "three young horses," one of which was in fact "Morgan."

Defendant requested the court to find and report whether Albertine understood that her horse "Morgan" was included in the sale to the plaintiffs, and excepted to the court's failure to make a finding on this subject. But in view of our holding

above, that the findings show no delivery in gift by the defendant and acceptance by Albertine, both essential to a perfected gift, this request and exception are immaterial.

Exception was taken to the finding that "the plaintiff was not given to understand that she (Albertine) claimed it ('Morgan') as her property," because it is not supported by the evidence. A complete transcript of the reporter's minutes is referred to, to determine whether there was any evidence warranting the findings made. It appears from the transcript that plaintiff Taplin testified in direct examination as follows: "Q. Did you learn while you were there (at defendant's house at time trade was made)—hear any one say that this 'Morgan' horse belonged to this girl? A. I never heard it that day—nothing of the kind." In cross-examination, he testified on the same subject as follows: "Q. Did the girl tell you something about her horse there? A. She did not tell me anything about her horse." "Q. Did she tell you anything about the horse at all? A. She did not." "Q. You say you never had any idea that this girl claimed to be the owner of that horse? A. I never had any idea that the daughter owned a hair on the horse, and it was never suggested in that room. Q. In either room? A. In neither of those rooms. Q. You never heard of that until to-day? A. I did at the municipal court." This testimony to the fact that the girl made no claim as to owning the horse "Morgan" at the time the trade was made, was corroborated by the testimony of Heath who was present and heard what was said.

In view of the foregoing testimony, it cannot be said that the finding to which the exception was taken, was unsupported by the evidence. The weight of the evidence was for the trial court, and the fact that defendant's evidence, perhaps as strongly, tended to show to the contrary, does not affect the finding.

The witness Heath testified in direct examination to making a memorandum on the day of the purchase, of what was bought by plaintiffs of defendant, and on being asked what minute of the trade he made in his diary, read the memorandum so made by him, stating that it was all he had on the book about what occurred at the time and place of the trade. The memorandum was then offered and received in evidence in connection with his testimony, to which no objection was made by defendant. The witness further testified that after agreeing upon

the price, Taplin named over to the defendant, in the presence of her husband, and of the daughter Albertine, and of the witness, just what he had bought, and wrote it down in his book at the same time, borrowing a pencil of the witness with which to write it; and that there was no talk made by defendant or the daughter that the horse ''Morgan'' belonged to the latter. In cross-examination, the witness testified that he wrote down just what is in his book—did not name the number of cattle; that he did not pretend to write down the trade; and that the memorandum did not in any way refresh his recollection as to just what the talk was; that the memorandum was correct as to what took place, but did not contain it all. Thereupon defendant moved that this exhibit be stricken out of the case, and to the overruling of the motion, saved an exception. We might very properly dispose of this exception on the ground that the memorandum was received in evidence without objection; but inasmuch as the aforementioned memorandum made by Taplin and testified to by him as correct, was received in evidence against defendant's exception on the ground that, as Taplin testified, it did not refresh his memory, the same question is there raised, and we dispose of the two exceptions together. As to the question in dispute, whether ''Morgan'' was included in the sale, the memorandum of the witness Heath was confirmatory of his testimony that it was; and the memorandum of Taplin was confirmatory of his testimony to the same effect. In each of these instances there was a private memorandum shown to have been correctly made by the witness in connection with whose testimony it was received in evidence, one at the time of the transaction. and the other, on the same day, of facts within the knowledge and recollection of the witness at the time he made the entry. Such a memorandum may properly be received in evidence in connection with the testimony of the witness, for two purposes: one, when used to refresh the recollection of the witness, and the other, as auxiliary to, or confirmatory of, the evidence of the witness, when he professes to recollect the facts. For the latter purpose, the memorandums in question were properly received, and the exceptions are without force. *Lapham* v. *Kelly*, 35 Vt. 195; *Cross* v. *Bartholomew*, 42 Vt. 206; *Cheney* v. *Ryegate*, 55 Vt. 499; *Stillwell* v. *Farewell*, 64 Vt. 286, 24 Atl. 243.

*Judgment affirmed.*