(No. 6442.   February 9, 1938.)

C. H. BASYE and BEATRICE SENECAL, Respondents,
v. H. G. HAYES, Appellant.

[76 Pac. (2d) 435.]

Chapman & Chapman, for Appellant.

J. H. Barnes, for Respondents.

GIVENS, J.—Respondents entered into a written agreement with appellant to manage and care for appellant's poultry ranch and fox farm for certain compensation in money and goods. The only portion of the agreement in dispute herein is for one-half the net profits from the fox feature of the agreement.

Respondents recovered judgment for $277.38 as one-half the net profits from the increase of foxes. Appellants raise four issues: First, there were no net profits because the expenses exceeded the value of the foxes produced and, collaterally, error in admitting Plaintiff's Exhibit C as not complete or accurate. Second, error in permitting respondent Basye and Bohner to testify as experts as to the value of the foxes as breeders and pelters and that the foxes were not worth the amounts so stated and claimed. Third, error in admitting evidence of one sale and purchase of claimed similar foxes to show market value. Fourth, error in refusal to give appellant's requested instruction No. 1.

Taking up the latter point first, the court defined the issues thus:

"Instruction No. 1

"Plaintiffs allege in their amended complaint, in substance as follows: That on or about September 2, 1935, plaintiffs and defendant entered into a written contract, copy of which has been admitted in evidence as Plaintiff's Exhibit A; that plaintiffs performed all of the duties and services required by the terms of said contract and on or about September 15, 1935, gave notice to defendant of their intention and desire to terminate said contract and remove from the premises on or about October 1, 1936; that all sums earned by plaintiffs for their services under said contract have been fully paid save and except their half of the net profits derived from the foxes; that plaintiffs demanded an accounting and settlement from defendant of the net profits derived from the foxes upon their giving notice to defendant of their intention to terminate the contract, but that defendant did not then and has since refused to make settlement or pay plaintiff anything therefor. Plaintiffs further say that during the period from September 2, 1935, to October 1, 1936, there was raised from the adult breeding foxes owned by defendant eight young foxes whose total market value on October 1, 1936, was $2400.00; that said foxes were raised for breeders and are readily saleable as such at said prices, and are worth much more as breeders than as pelters; that the total cost of raising said foxes is $12.50 per head, or a total of $100.00, leaving

a balance of $2300.00 as the net value or profit produced by said adult breeding foxes during the period of plaintiff's employment under the contract. Plaintiffs waive any and all of said profits or damages in excess of $500. and claim recovery of $500.00 only.

"Answering the amended complaint defendant makes denial of each and every paragraph thereof."

And placed the burden of proof on respondents and instructed as to net profits thus:

"Instruction No. 6

"Gentlemen of the jury, you are instructed that the term 'net profits' as used in the contract, plaintiff's Exhibit A, means the gain that accrued from the raising of foxes, after deducting the losses, if any, and expenses of said business; that is to say, you must first deduct from the clear gains of said business venture, the expenses incurred in its conduct and the losses, if any, sustained in its prosecution."

Thus the gist of the requested instruction:

"You are instructed, gentlemen of the jury, that before the plaintiffs are entitled to recover in this action you must determine from the evidence whether or not there were any net profits derived from the raising of the eight fox pups, and that if you find from the evidence that there were no net profits, then your verdict should be for the defendant. (Defendant's requested Instruction No. 1.)"
was sufficiently stated to the jury. (*Goodman v. Village of McCammon*, 42 Ida. 696, 247 Pac. 789; *Schmidt v. Williams*, 34 Ida. 723, 203 Pac. 1075; *Dillon v. Brooks*, 51 Ida. 510, 6 Pac. (2d) 851; *Pipher v. Carpenter*, 51 Ida. 548, 7 Pac. (2d) 589.)

Plaintiffs' Exhibit C is a little memorandum book with entries on two pages thereof which Basye testified he made of amounts of feed given the foxes. Appellant objected to its admission because incomplete as not containing all items of expense, appellant contending additional charges of expense should be made against the value of the foxes, thus, of course, reducing the net income to be derived therefrom. Respondents on the other hand, contended the various items urged by appellant were not proper charges and

not to be taken into consideration. The items of claimed deficiency were all inquired into and presented on cross-examination before the jury and though Exhibit C did not contain what appellants asserted it should, it showed what respondents claimed was, with explanations in regard to other items, complete, or at least sufficiently comprehensive of the supplies there set forth to justify its admission.

"The shopbook rule applies to the books of one party to show sales made to or services rendered for the other party." (*Radtke v. Taylor*, 105 Or. 559, 210 Pac. 863, 870, 27 A. L. R. 1423; *Taplin & Rowell v. Clark*, 89 Vt. 226, 95 Atl. 491, 494; *Powell v. Pickett*, 219 Ala. 18, 121 So. 23; *Reed v. Bannister*, 202 Ala. 328, 80 So. 410.)

The weight and sufficiency to be given the exhibit was for the jury. (*Fox v. Cox*, 20 Ind. App. 61, 50 N. E. 92; *MacDiarmid v. McDevitt*, 97 Cal. App. 414, 275 Pac. 500; *Glenn v. Glenn*, 84 Wash. 215, 146 Pac. 619; *Oklahoma Natural Gas Co. v. McFarland*, 103 Okl. 6, 229 Pac. 216; *Fife v. Adair*, 173 Okl. 234, 47 Pac. (2d) 145; *Pawnee Farmers' Elevator & Supply Co. v. Powell*, 76 Colo. 1, 227 Pac. 836, 37 A. L. R. 6; *Radtke v. Taylor, supra*.)

Respondent Basye testified as to what he considered were proper charges to make for the handling of the foxes allocated to that branch of the work performed under the agreement of employment and segregated from the expenses of the management and care of the chickens, etc. Appellant himself did not testify as to this phase of the matter and while appellant has presented elaborate tables, figures and analyses of what he contends are the correct deductions, the solution of the conflict both as to basic facts and deductions was for the jury. (*Adams v. Bunker Hill etc. Min. Co.*, 12 Ida. 637, 89 Pac. 624, 11 L. R. A., N. S., 844; *Tonkin-Clark Realty Co. v. Hedges*, 24 Ida. 304, 133 Pac. 669; *Thibadeau v. Clarinda Copper Min. Co.*, 47 Ida. 119, 272 Pac. 254; *Slater v. Mayzie*, 69 Cal. App. 87, 230 Pac. 453; *State v. Smith*, 57 Mont. 563, 190 Pac. 107; *State Bank v. Kiser*, 46 Okl. 180, 148 Pac. 685; *Tennessee Cent. Ry. Co. v. Morgan*, 132 Tenn. 1, 175 S. W. 1148; 5 Wigmore on Evidence, 2d ed., sec. 2551.)

Basye stated he had no knowledge of or experience

with foxes before working for appellant, but in addition to actually handling and caring for the foxes herein and the increase when whelped, he read and studied magazines furnished by appellant and visited and talked with four other fox raisers. Bohner had six years' experience in raising, buying and selling foxes. This was sufficient showing to justify the trial court's permitting them to testify as to similarity of the eight young foxes, constituting the sole value in the fox venture, with other foxes and their value for breeders and pelters.

In *American Bonding Co. v. Regents of University*, 11 Ida. 163, 186, 81 Pac. 604, the court permitted a witness who had been engaged in the hardware business to testify as follows:

"Have you recently made an estimate of the value of certain high and low pressure steam fixtures? A. Yes, sir; we can get prices out of the catalogues at any time. Q. Can you tell us what a No. 2 Mason steam trap is worth here in Moscow? Court: Answer that yes or no, whether you are acquainted with the value of such a trap. A. No, not without figuring it out from catalogue prices and discounts. Q. Are you prepared to furnish a Mason steam trap here in Moscow? A. Yes, sir. . . . . Mr. Gilbert (of counsel): We object on the ground that it is incompetent, irrelevant, and immaterial, particularly that it is incompetent on the ground that the witness himself in his testimony has shown that he is incompetent to testify as to the value of these things in response to Mr. Moore's question. He has said that the only way he can ascertain the value of these articles . . . . is by referring to some catalogue and discount list. . . . . The Court: I think that is the way they get values when they buy goods. Mr. Gilbert: Surely, this court is not going to let this jury ascertain the value through catalogues. We haven.'t the opportunity to cross-examine the man who made up that catalogue. The Court: If he knows what the value is, he may state it; if he does not, he won't state it. Are you acquainted with the value of one of these articles here? A. I can take the value out of the list we have and figure the freight is the only way. The Court: . . . . Do you know the

value? A. I can tell what it would cost laid down in Moscow, yes; and we figure a certain per cent. . . . . "

"The fourth and sixth grounds for a new trial were permitting two witnesses to testify as to the value of certain machinery. It is not necessary that a witness be an expert in a case. The extent of a witness' knowledge before being permitted to testify as to values is within the discretion of the trial court, and it is only where there is· a total lack of such knowledge, or there is a palpable abuse of the discretion that the appellate tribunal will interfere. . . . . The extent of a witness' knowledge of the subject-matter about which he testifies as to value goes to the weight of his testimony, and not to its competency." (*Fox v. Cox,* 20 Ind. App. 61, 50 N. E. 92.)

" . . . . A witness need not be qualified in the highest degree, nor in any particular degree, to make his opinion on a question of value or quantity admissible. (*Comstock v. J. R. Droney Lbr. Co.,* 69 W. Va. 100, 71 S. E. 255.) It suffices that he has some peculiar qualification, more knowledge than jurors are supposed ordinarily to have." (*Cochran v. Craig,* 88 W. Va. 281, 106 S. E. 633, 639; *Louisville & N. R. Co. v. Whitley,* 213 Ala. 525, 105 So. 661, 662; *Bowers v. Horan,* 93 Mich. 420, 53 N. W. 535, 32 Am. St. 513, 17 L. R. A. 773; *Hodges v. Causey,* 77 Miss. 353, 26 So. 945, 78 Am. St. 525, 48 L. R. A. 95; *Columbus R. Co. v. Woolfolk,* 128 Ga. 631, 58 S. E. 152, 119 Am. St. 404, 10 L. R. A., N. S., 1136.)

Evidence of one sale by Paree to Bohner of two foxes for $300 each, assertedly similar, as tending or helping to establish the market value of foxes was admitted over the objection that one sale is not competent for such purpose. While there are some isolated cases holding that the sale of the particular property involved is admissible, the general rule is that one sale of another, though similar article, is not admissible to show market value. (*The Oceanica,* 156 Fed. 306; *Hall v. Delaware etc. Ry. Co.,* 262 Pa. 292, 105 Atl. 98; *Hammond v. Decker,* 46 Tex. Civ. App. 232, 102 S. W. 453; *Hibernia Sav. & Loan Soc. v. Ellis Estate Co.,* 132 Cal. App. 408, 22 Pac. (2d) 806, 808; *Merchants' Trust Co. v. Hopkins,*

103 Cal. App. 473, 284 Pac. 1072, 1074; *In re Elevated Ry. Structures,* 229 App. Div. 617, 243 N. Y. Supp. 665, 679; *Humble Oil & Refining Co. v. Kishi,* (Tex. Civ. App.) 299 S. W. 687; 22 C. J., pp. 187, 188.)

It was therefore error to admit the testimony of the sale of foxes by Paree to Bohner. Basye testified the eight foxes raised were worth, as pelters, from $50 to $60 and might go as high as $80 to $85; as breeders from $200 to $300 each. Bronson testified that a pelt similar to the foxes in question was worth from $75 to $80. Paree on cross-examination testified he appraised the pelts of the foxes in question at twenty to forty dollars and if anything he over estimated rather than under estimated their value. If the jury had considered the evidence of this sale of the two foxes for $300 each as fixing the value of the foxes in question the total market value for the eight foxes involved would be $2,400. The verdict was for $277.38, which represented half the net value, so that the gross value before deducting expenses for feed, care, etc., and allocated to the foxes as distinguished from the chickens, etc., would have been $654.76; evidently, therefore, the jury did not base their verdict upon the sale price as testified to, because if it had given only one fox the value of $300 as a breeder the verdict would have been more than as found. Hence it does not seem that appellants were prejudiced by the testimony of this one sale, and while there is a conflict and some disparity in respondent's own evidence as to the value of the foxes, there is sufficient evidence herein to sustain the verdict for respondents.

Judgment *affirmed.* Costs to respondents.

Morgan, Ailshie and Budge, JJ., concur.

Holden, C. J., dissents.